734 So.2d 623 (1999)
AL JOHNSON CONSTRUCTION COMPANY and LIGA.
v.
Donald PITRE.
No. 98-C-2564.
Supreme Court of Louisiana.
May 18, 1999.
Rehearing Denied June 25, 1999.
Henry Gerard Terhoeve, Kevin Paul Landreneau, Charles A. Schutte, Jr., Guglielmo, Marks, Schutte, Terhoeve & Love, Baton Rouge, Counsel for Applicant.
Felix Anthony DeJean, III, Michael Keith Leger, DeJean, DeJean, Leger & Mouret, Opelousas, Counsel for Respondent.
*624 LEMMON, Justice.[*]
This is a proceeding in the Department of Workers' Compensation filed by Donald Pitre's employer, who is currently paying temporary total benefits to Pitre. The employer is seeking recognition of the right to an offset under La.Rev.Stat. 23:1225 C(1) based on Pitre's contemporaneous receipt of Social Security disability benefits. In the lower courts, Pitre conceded the employer's entitlement to an offset under this court's decision in Garrett v. Seventh Ward Gen. Hosp., 95-0017 (La.9/22/95), 660 So.2d 841, and the litigation focused on whether the offset in the proportion of the plan benefits funded by "an employer" means the payments into the plan by all of Pitre's past and present employers or the payment by his employer at the time of the injury.[1]

Facts
Pitre was injured on the job in 1984. The parties litigated the extent of the disability in an earlier proceeding, and the workers' compensation judge found that Pitre was permanently and totally disabled. The court of appeal reversed on the basis of medical evidence that Pitre could be rehabilitated, but awarded temporary total benefits. 94-290 (La.App. 3d Cir.10/5/94), 651 So.2d 301.
Two years later, this court in the Garrett decision held that an employer is entitled under La.Rev.Stat. 23:1225 C(1) to a reduction in its workers' compensation obligation when Social Security disability benefits are being received contemporaneously by a disabled employee. Thereafter, the employer filed a motion to recognize the offset under La.Rev.Stat. 23:1225 C(1), which provides in pertinent part:
C. (1) If an employee receives remuneration from:
(a) Benefits under the Louisiana Workers' Compensation Law.
(b) Old-age insurance benefits received under Title II of the Social Security Act to the extent not funded by the employee.
(c) Benefits under disability benefit plans in the proportion funded by an employer.

(d) Any other workers' compensation benefits,
then compensation benefits under this Chapter shall be reduced ... so that the aggregate remuneration from Subparagraphs (a) through (d) of this Paragraph shall not exceed sixty-six and two-thirds percent of his average weekly wage. (emphasis added).
At the trial of the motion, the workers' compensation judge found that Pitre was receiving $1,179 monthly in total family Social Security benefits[2] and $1,062 monthly in workers' compensation benefits. The evidence further established that 50.43% of Pitre's Social Security account had been funded by his contributions,[3] and that 49.57% of the account had been funded by the contributions of all of his employers, of which 0.94% had been funded by the contributions of Pitre's employer at the time of the accident.
In determining the proportion of the Social Security disability plan funded by the employer, the accounting expert presented by the employer multiplied the Social Security benefits by 49.57%, which was the percentage of payments into the Social Security system made by all of Pitre's past *625 employers, including the employer at the time of the accident. However, if the proportion had been calculated by multiplying the Social Security benefits by the percentage of payments into the system made by this employer only, for whom Pitre had worked for less than two years, the multiplier would have been only 0.94%, and the offset would have been so small as to be negligible. The workers' compensation judge used the lower percentage and ruled that the employer was not entitled to an offset.
On appeal, the intermediate court affirmed, concluding that Section 1225 C(1) grants Pitre's employer an offset "only to the extent the disability benefits were funded by that employer." 98-149, p. 5 (La.App. 3d Cir.9/16/98), 720 So.2d 14, 16 (emphasis added). The court emphasized the wording "an employer," as contrasted to "all employers."
This court granted the employer's application for certiorari to address this issue of statutory interpretation. 98-2564 (La.12/11/98), 729 So.2d 585.

Wage-Loss Benefit Coordination
In Garrett, supra, this court reviewed the history and purpose of wage-loss benefit coordination laws. We observed that the dual purpose of benefit coordination laws, in an overall system of employer-based wage-loss protection that may provide several types of wage-loss benefits, is to assure that the employee or his or her dependents receive some degree of recovery of lost support, while precluding the employee from contemporaneously recovering duplicative benefits under different parts of the overall system that frequently exceeded the actual wages earned prior to the disability. Garrett, 95-0017 at 2, 660 So.2d at 843. We further noted that La. Rev.Stat. 23:1225 C(1) provides Louisiana employers with a reduction in their workers' compensation obligation for benefits provided by different employer-based sources. Id., 95-0017 at 8, 660 So.2d at 845.
La.Rev.Stat. 23:1225 clearly is a wage-loss benefit coordination statute, and the initial enactment (now Section 1225 A) was enacted specifically to allow coordination between Louisiana workers' compensation benefits and federal Social Security disability benefits, although the Legislature for some reason chose to make Section 1225 A applicable only in cases of permanent total disability.[4] The critical holding of Garrett was that the subsequently-enacted Section 1225 C contemplated inclusion of Social Security disability benefits in the term "benefits under disability benefit plans" in Section 1225 C(1)(c), so that Social Security disability benefits are coordinated with workers' compensation benefits in cases other than permanent total disability.

Reconsideration of Garrett Decision
Pitre first requests that this court reconsider the critical holding in Garrett that an employer is entitled under Section 1225 C(1)(c) to an offset of Social Security disability benefits, although Section 1225 C(1)(c) does not mention Social Security benefits.
In Garrett, we concluded that the Legislature, by not expressly qualifying the term "disability benefits plans" either as limited to private disability benefit plans or as including Social Security disability benefits, intended to provide an offset for benefits received under any disability plan. Id., 95-0017 at 10, 660 So.2d at 846. We also observed that disability benefits under the Social Security Act are benefits under a disability benefit plan. Id. We further reasoned that construing Section 1225 C(1) as excluding an offset for Social Security disability benefits would permit the exact duplication of benefits that wage-loss benefit coordination statutes such as Section 1225 C(1) are designed to preclude. Id., 95-0017 at 11, 660 So.2d at 847.
*626 On reconsideration, we conclude that Garrett was wrongly decided.[5] We were motivated in Garrett in large part by the objective of preventing "double recovery," perhaps in excess of actual wages, from two sources of wage-loss benefits. We now recognize that federal law prevents any such "double recovery" from Social Security funds, irrespective of whether Section 1225 C(1)(c) was intended to include Social Security disability benefits. We therefore reinitiate our analysis of the entirety of Section 1225 C(1).
The present federal statute, under the 1965 re-enactment as part of the major revision of the Social Security Act, requires that the amount of Social Security benefits be reduced when the combined amounts of Social Security disability benefits and state workers' compensation benefits exceeds eighty percent of the employee's "average current earnings."[6] 42 U.S.C. § 424a(a) (1991). This offset of state benefits against federal benefits prevents a disabled employee who is receiving both types of disability benefits from receiving more than eighty percent of his pre-injury wages, while at the same time allowing a supplement to the generally inadequate state workers' compensation benefits.
For a limited period of time, the federal offset statute provided that the federal offset was not applicable when a state law provided for an offset of Social Security disability benefits against overlapping state workers' compensation benefits.[7] This "reverse offset" provision allowed state legislatures to bestow an advantage on local employers, since state employers, instead of Social Security, could take the offset that Social Security otherwise would have alone been authorized to take. If the state legislature acted under this authorization, the single offset was a reduction in overall benefits that accrued to the benefit of employers on the state workers' compensation side of the equation, at the expense of Social Security. There was no corresponding disadvantage to employees, since either the state or the federal system, but not both, would receive the benefit of the reduction to the eighty percent ceiling on the total benefits.
In 1978, the Louisiana Legislature took advantage, to some extent, of this Congressional beneficence by enacting the reverse offset provision now included in La. Rev.Stat. 23:1225 A.[8] However, the Legislature *627 for some reason chose to make the reverse offset applicable only in cases of permanent total disability, and the reverse offset therefore does not apply in the present case.[9] Nevertheless, in the cases in which the reverse offset applied, the state's reduction took precedence over the federal reduction and precluded application of a second offset. Sciarotta v. Bowen, 837 F.2d 135 (3d Cir.1988).
The Louisiana Legislature took no further action to extend the reverse offset to cases other than those involving permanent total disability. After the cutoff date of February 18, 1981, states could no longer enact reverse offset provisions, or add to or alter the scope of an existing state reverse offset statute. The result is that while federal law provides for a reduction in overall benefits in all cases in which a disabled employee is receiving Social Security disability benefits and state workers' compensation benefits, Louisiana employers receive the advantage of the reverse offset reduction only when the employee is permanently totally disabled.
In 1983, as part of a comprehensive revision of the workers' compensation laws, the Legislature enacted La.Rev.Stat. 23:1225 C, which this court considered in Garrett. The present case, like Garrett, involves temporary total disability, and Section 1225 A does not apply.
As noted, our principal motivation in Garrett was to prevent a duplication of benefits that wage-loss benefit coordination statutes are designed to preclude.[10] Perhaps because the calculation of the offset was not at issue in Garrett, we failed to recognize that federal laws prevented recovery of duplicate benefits in excess of eighty percent of prior earnings in any case in which the employee was receiving both federal Social Security and state workers' compensation benefits. Section 1225 C(1)(c) therefore was not necessary to prevent recovery of excessive duplicative benefits from both sources.
Irrespective of Section 1225 C(1), federal laws placed a ceiling on combined Social Security and state workers' compensation benefits of eighty percent of average current earnings. Thus, disabled employees could never recover in total disability benefits more than their actual earnings prior to the accident. This reduction in total benefits also worked to the advantage of employers whose state legislatures enacted comprehensive reverse offset provisions. Because the Louisiana Legislature chose only to take partial advantage of this opportunity for Louisiana employers to reduce their workers' compensation obligations, and because federal law in all cases prevents "double recovery" beyond eighty percent of average current earnings, we erred in construing the legislative intent of Section 1225 C to include Social Security disability benefits in the term "[b]enefits under disability benefit plans." Such an interpretation was not dictated by the dual purpose of wage-loss benefit coordination laws to assure continuation of a minimum portion of an employee's actual wages in the event of disability or death while precluding the employee from contemporaneously recovering duplicative benefits under *628 different parts of an overall scheme of wage-loss benefits.
In summary, a disabled employee receiving both Social Security disability benefits and state workers' compensation benefits is limited by federal law to total benefits from both sources of eighty percent of his or her average current earnings, and there is no duplicative recovery of benefits beyond that amount. When the employee is permanently totally disabled, however, the employer receives under Section 1225 A the advantage in the reduction of total benefits to the federal ceiling. When the employee is temporarily totally disabled, however, the federal authorities take the reduction of total benefits to the federal ceiling, and this court's decision in Garrett apparently had the effect of allowing state employers to reduce their compensation obligation (in addition to the reduction already taken by the federal authorities) from eighty percent of the employee's average current earnings to sixty-six and two-thirds percent of average weekly wage. From the standpoint of the temporarily totally disabled employee, the result of Garrett was to reduce total benefits to below the federal ceiling, which was different treatment than that accorded an employee with permanent total disability. We now recognize that the Legislature, in enacting Section 1225 C(1), hardly contemplated this disparate treatment.
Accordingly, we overrule our prior decision in Garrett v. Seventh Ward General Hosp., 95-0017 (La.9/22/95), 660 So.2d 841. We now hold that the term "[b]enefits under disability benefit plans" in La.Rev. Stat. 23:1225 C(1)(c) does not include Social Security Disability benefits.

Decree
For these reasons, the judgments of the lower courts are reversed insofar as they recognized an offset in favor of the employer, and the employer's action for recognition of the right to an offset is dismissed.
MARCUS, J., dissents and assigns reasons.
TRAYLOR, J., dissents for reasons assigned by MARCUS.
MARCUS, Justice, dissenting.
I agree with the majority that pursuant to La. R.S. 23:1225 A, Louisiana may claim a reverse offset only with respect to workers' compensation benefits payable for "permanent total disability." This provision was enacted in 1978 and allows Louisiana employers to claim a credit in cases where a worker is also entitled to certain benefits under the federal Social Security System, so that the combined benefits shall not exceed 80% of the worker's average weekly wage. The federal government allowed states to enact such reverse offset provisions until a cut-off date of February 18, 1981. But for the enactment of La. R.S. 23:1225 A, the credit in such cases would be taken by the federal government.
Because Louisiana did not timely adopt a reverse offset provision as to any other category of disability benefit payments, the federal government is entitled to claim the credit to the extent provided by federal law against benefits otherwise payable under the federal system such that a worker's total benefits from the state and federal systems does not exceed 80% of average weekly wages in cases other than "permanent total disability". This credit is taken by reducing the amount otherwise payable by the federal government.
In 1983, Louisiana's legislature enacted a statute providing that benefits payable under Louisiana's compensation system will be reduced in the event a worker is getting benefits from certain other enumerated sources, such that the total benefits shall not exceed 66 2/3 % of the worker's average weekly wage. La. R.S. 23:1225 C. Since this statute was passed after 1981, it is clearly not a reverse offset provision and cannot affect any credit the federal government is entitled to take to reduce federal payments such that benefits do not *629 exceed 80% of average weekly wages. However, I see no legal impediment to our legislature's determination that Louisiana employers should be able to get a credit against payments otherwise due by them to further reduce the total benefits payable from 80% to 66 2/3 % of average weekly wages. That was the clear intent of the legislature in 1983 when it enacted La. R.S. 23:1225 C.
Moreover, I do not agree that our reasoning in Garrett v. Seventh Ward Gen. Hosp., 95-0017 (La.9/22/95), 660 So.2d 841, was infirm or that our holding therein should be reversed. In Garrett, we determined that the reduction stipulated in La. R.S. 23:1225 C(1)(c) was intended to take into account federal Social Security disability compensation benefits as well as payments under private systems. The fact that the federal government has claimed a credit to reduce the overlap of disability benefits so that workers do not get more than 80% of average weekly wages has no bearing whatsoever on whether the state legislature intended to further reduce the overlap of all disability benefits by reducing the state benefits payable so that the total amount paid does not exceed 66 2/3% of the average weekly wage. Our interpretation in Garrett insures that all recipients of all of the types of benefits described under La. R.S. 23:1225 C are treated the same and that all such benefits are coordinated in the same way. That being the case, I would have reached the issue upon which we originally granted writs.
Accordingly, I respectfully dissent.
NOTES
[*] Victory, J., not on panel. Rule IV, Part 2, § 3.
[1] Pitre argued in both lower courts for the overruling of Garrett, but conceded that those courts were bound by the decision.
[2] Although the amount was referred to as total family benefits, the evidence established that Pitre was the only family member receiving benefits. The entitlement of his wife and son to benefits had ended some time prior to this proceeding.
[3] Generally the employee and the employer contribute equally into the Social Security fund. The slight imbalance in Pitre's account was attributable to the fact that he was self-employed during a brief period in his work history.
[4] Section 1225 A specifically requires coordination of Social Security disability benefits with workers' compensation benefits for "permanent total disability."
[5] Because we now conclude that Section 1225 C(1)(c) did not contemplate Social Security disability benefits in the term "[b]enefits under disability benefit plans," there is no need to address the issue for which certiorari was granted.
[6] Significantly, the federal statute applies to all state workers' compensation benefits and is not limited to permanent total disability benefits.
[7] See generally 9 Arthur Larson & Lex K. Larson, Larson's Workers' Compensation Law §§ 97.35-97.36 (1998) (discussing coordination of state workers' compensation benefits with federal Social Security disability benefits, including the history of the Social Security offset under 42 U.S.C. § 424a and various states' reverse offset provisions).
[8] La.Rev.Stat. 23:1225 A provides:

The benefits provided for in this Subpart for injuries producing permanent total disability shall be reduced when the person receiving benefits under this Chapter is entitled to and receiving benefits under 42 U.S.C. Chapter 7, Subchapter II, entitled Federal Old Age, Survivors, and Disability Insurance Benefits, on the basis of the wages and self-employment income of an individual entitled to and receiving benefits under 42 U.S.C. § 423; provided that this reduction shall be made only to the extent that the amount of the combined federal and worker's compensation benefits would otherwise cause or result in a reduction of the benefits payable under the Federal Old Age, Survivors, and Disability Insurance Act pursuant to 42 U.S.C. § 424a, and in no event will the benefits provided in this Subpart, together with those provided under the federal law, exceed those that would have been payable had the benefits provided under the federal law been subject to reduction under 42 U.S.C. § 424a. However, there shall be no reduction in benefits provided under this Section for the cost-of-living increases granted under the federal law after the date of the employee's injury.
[9] If Pitre had been determined to be permanently and totally disabled, and if the reverse offset provision of Section 1225 A therefore had been applicable, Pitre's total benefits of $2,241 ($1,179 in Social Security benefits plus $1,062 in workers' compensation benefits) could not exceed the greater of the Social Security benefits or eighty percent of average current earnings ($1,911), and the monthly offset allowable to the Louisiana employer apparently would have been $330 ($2,241 minus $1,911). Because Pitre was temporarily totally disabled and the Legislature did not enact a reverse offset for that category of disability, this reduction to eighty percent of average current earnings is apparently being taken by the federal authorities.
[10] In Garrett, we noted that "such a construction [to exclude Social Security disability benefits from Section 1225 C] would permit the exact duplication of benefits that benefit coordination provisions like Section 1225 are designed to preclude." 95-0017 at 11, 660 So.2d at 847.