|,BROWN, C.J.
Defendant, Ouachita Fertilizer Company (“Ouachita”), has appealed from an adverse judgment rendered by the Workers’ Compensation Judge (“WCJ”) in favor of claimant, Chester Ausberry, awarding him supplemental earnings benefits (“SEB”), medical benefits, pharmacy and mileage costs, and penalties and attorney fees. For the reasons set forth below, we affirm in part, reverse in part, and render.

Procedural Background

On June 5, 2001, claimant, Chester Aus-berry, a seasonal contract employee of Ouachita Fertilizer Company, alleged that he fell and was injured while in the course and scope of his employment.[1] Claimant was initially paid benefits; however, they were terminated on February 7, 2002. He filed a claim with the Office of Workers’ Compensation seeking further benefits, medical benefits, penalties, and attorney fees. Defendant disputed that an on-the-job accident occurred; and contended that claimant was committing fraud by receiving both wages and temporary total disability (“TTD”) benefits at the same time. Ouachita alternatively sought a credit or reimbursement for the wages and/or benefits paid to claimant.
The WCJ found that claimant suffered a compensable work injury. The WCJ further found that Ausberry did not commit fraud by receiving wages contemporaneously with TTD benefits and that claimant was entitled to SEB from February 10, 2002, until his release to return to full duty work, as well as mileage expenses, drug costs, and continued medical treatment. I ¿The WCJ awarded claimant a $2,000 penalty, as well as $5,000 in attorney fees. It is from this judgment that defendant has appealed.

Discussion

A Compensable Work Injury

Claimant and an eyewitness, Elbert Wallace, testified regarding the accident. Wallace testified that he saw claimant slip and fall. Claimant testified that he was standing on a pipe attached to the lower part of a trailer and, while tightening a strap, he slipped from the pipe and fell. Ouachita points out that claimant waited more than a month before mentioning the accident to his doctor and did not report the accident to Dwain Traylor, comptroller for Ouachita, until three weeks after it allegedly occurred. Defendant claims that the evidence is inconsistent, and therefore the WCJ erred in finding that an on-the-job injury occurred.
When findings are based on determinations regarding the credibility of witnesses, the manifest error-elearly wrong standard demands great deference to the *668 trier of fact. Ragland v. Hodge, 32,438 (La.App.2d Cir.12/08/99), 748 So.2d 567. We can not say that the WCJ’s conclusion on whether a compensable accident occurred was manifestly erroneous or clearly wrong.

Supplemental Earning Benefit (SEB)

Ouachita discontinued benefits only after a light-duty job, which complied with his physician’s restrictions, was offered to claimant and rejected.
13At trial, defendant produced five separate witnesses who detailed the measures taken to locate claimant and offer him a modified position. Gary Parker, a manager for Ouachita, testified that, following meetings and conversations with Ann Block, the independent medical case manager, Ouachita created a position for claimant which met the light-duty restrictions imposed by Dr. Bailey. Parker testified that he spoke with claimant on February 1, 2002, and advised Ausberry that they were going to give him work within his restrictions, and that he should come in that day to discuss the specifies. Claimant told Parker that he would come in, but he failed to do so.
Ms. Block testified that she spoke with claimant on February 4, 2002. She advised him that his employer needed to speak with him about a new position. She testified that she explained to claimant that the position had been modified to fit his doctor’s restrictions.
Dwain Traylor, defendant’s comptroller, testified that he personally spoke with claimant on February 4, 2002, and asked Ohim to come in so that they could discuss the new position. According to Traylor, claimant agreed to come in that day, but never did so. Claimant was terminated three days later, on February 7, 2002, pursuant to company policy.
Levy Lord, an employee of Ouachita, stated that Gary Parker asked him to make contact with Ausberry. Lord went, on several occasions, to the residence and farm of claimant, as well as to claimant’s mother’s house. Lord asked claimant’s brother, Edward Ausberry, for assistance in locating claimant. Lord also attempted to contact claimant by telephone and pager, 14but claimant never responded. Willie Estis, another employee of defendant, testified as to his efforts to locate claimant. Estis stated that he went by claimant’s house on one occasion, but failed to find him.
Notwithstanding the above testimony, the WCJ found that “not one shred of evidence was presented showing correspondence or other documentation” that a job offer was made.
It is clear from the record that claimant’s treating physician released him to light-duty work as of December 18, 2001, and that defendant offered claimant work within those restrictions. Defendant attempted to make contact with claimant by reasonable means in January 2002, and did in fact contact him on three occasions in early February 2002. Ausberry agreed to come in on the day of each contact, but failed to do so. Claimant’s refusal to come in to discuss the position was seen as an abandonment of his job. We agree. Accordingly, we reverse the award of SEB as well as the award of all medical treatment, mileage and pharmacy costs after February 7, 2002, the date of claimant’s termination.
Because we find that Ouachita’s actions in discontinuing benefits and terminating claimant were reasonable in light of his release to return to light duty employment and his failure to respond to the offer of a modified position, we also reverse the WCJ’s award of penalties and attorney fees.

*669
Double Recovery

Defendant’s last complaint is that claimant was allowed double recovery by receiving both contract wages and TTD benefits for the time period of September 1, 2001, through February 7, 2002. Oua-chita asserts |fithat this double recovery constitutes fraud pursuant to La. R.S. 23:1208. In her ruling, the WCJ found that claimant did not commit fraud by receiving both wages and TTD benefits at the same time. The WCJ was apparently impressed by the fact that claimant had asked Traylor, defendant’s comptroller, whether he would be allowed to make a double recovery, and that Traylor advised claimant that he would have to think about it. The record also contains testimony by Traylor that he thereafter spoke twice with Ausberry and advised him that, after thinking about claimant’s question, he determined that double recovery would not be appropriate. The manifest error standard of review mandates that the WCJ’s finding on this issue will not be overturned unless it is clearly wrong. See Houston v. Blue Cross Blue Shield of Louisiana, 37,-097 (La.App.2d Cir.04/09/03), 843 So.2d 542. Based on the record, it appears that there was evidence from which the WCJ could have found that claimant was not intentionally deceiving his employer.
The analysis does not end there, however, inasmuch as we find that the WCJ erred by not awarding reimbursement to Ouachita for amounts it overpaid claimant. See Al Johnson Construction Company and Liga v. Pitre, 98-2564 (La.05/18/99), 734 So.2d 623.
According to the record, claimant was receiving both wages and TTD benefits from September 1, 2001, the beginning of the contract “on call” period, until the time he was terminated on February 7, 2002. From a review of the record, it appears that claimant was not classified as disabled by his doctor until November 7, 2001. Accordingly, claimant should have ^received his regular salary until that time, but not TTD benefits. Therefore, defendant is entitled to reimbursement of the TTD benefits it paid to claimant from September 1, 2001, until November 7, 2001. Thereafter, claimant was entitled to receive the TTD benefits, but not his salary. Accordingly, defendant is entitled to a reimbursement of the salary it paid to claimant from November 7, 2001, until his termination on February 7, 2002.
The parties stipulated that claimant’s weekly wage was $400.91, and his weekly TTD benefits were $267.28. For the period beginning September 1, 2001, and ending November 7, 2001, Ouachita is due reimbursement in the amount of $2,539.16. For the period beginning November 7, 2001, and ending February 7, 2002, defendant is due reimbursement in the amount of $5,211.83. The total reimbursement due Ouachita is $7,750.99.
There is no dispute that claimant was entitled to mileage and pharmacy costs from the date of the accident through the date of his termination. The record shows that claimant documented 930 miles from June 5, 2001, to February 7, 2002. Accordingly, he is entitled to mileage expenses totaling $328.65. The record also contains evidence of pharmacy costs incurred by claimant in the amount of $382.63. These amounts are to be subtracted from the reimbursement owed by claimant to his employer. Deducting the total of mileage and pharmacy expenses, $711.28, from $7,750.99, results in Ouachita being owed reimbursement in the amount of $7,039.71.
| Conclusion
That portion of the WCJ’s judgment finding a compensable accident is affirmed. The award of SEB is reversed, as are the penalty and attorney fee awards. *670 Finding that defendant is entitled to a reimbursement of TTD benefits -and wages paid as set forth above, subject to amounts due to claimant for unpaid mileage and pharmacy costs from the date of the accident until the date of termination, we render judgment in favor of defendant, Ouachita Fertilizer Company, ordering claimant, Chester Ausberry, to reimburse Ouachita Fertilizer Company in the amount of $7,039.71. Costs of this appeal are to be split by the parties.

. According to the terms of his contract, claimant was to be paid a base salary of $1,297.91 per month, plus overtime. He was to work February 1 through August 31 each year, and be on call, as needed, from September 1 through January 31.