902 So.2d 1180 (2005)
Josie Lee YOUNG, Plaintiff-Appellant
v.
CHRISTUS SCHUMPERT MEDICAL CENTER, Defendant-Appellee.
No. 39,593-WCA.
Court of Appeal of Louisiana, Second Circuit.
May 11, 2005.
*1181 Lacey Perry Wallace, Bossier City, for Appellant.
Mayer, Smith & Roberts, L.L.P., by John Chris Turnage, Shreveport, for Appellee.
Before BROWN, GASKINS and DREW, JJ.
DREW, J.
Josie Lee Young was employed at Christus Schumpert Hospital in Shreveport as a housekeeper. On June 9, 1997, Young was injured at work when she tore ligaments in her right knee as she caught a co-worker who had fainted. She began receiving weekly workers' compensation benefits of $254.86. At some point, Young also began *1182 receiving Social Security old age benefits. On October 20, 1998, it was ordered that Young's weekly workers' compensation benefits were to be reduced by $55.15 to reflect the receipt of her old age benefits. This offset was mandated by La. R.S. 23:1225(C)(1), which provided, in part:
C. (1) If an employee receives remuneration from:
(a) Benefits under the Louisiana Workers' Compensation Law.
(b) Old-age insurance benefits received under Title II of the Social Security Act to the extent not funded by the employee.
(c) Benefits under disability benefit plans in the proportion funded by an employer.
(d) Any other workers' compensation benefits,
then compensation benefits under this Chapter shall be reduced, unless there is an agreement to the contrary between the employee and the employer liable for payment of the workers' compensation benefit, so that the aggregate remuneration from Subparagraphs (a) through (d) of this Paragraph shall not exceed sixty-six and two-thirds percent of his average weekly wage.
Section (C)(1)(b) of the statute was later declared unconstitutional in Wal-Mart v. Keel, XXXX-XXXX (La.4/3/2002), 817 So.2d 1.
On March 12, 2003, Young filed a 1008-Disputed Claim for Compensation form. She asserted that her full indemnity benefits should be restored from the date the offset commenced because the offset had been declared unconstitutional in Keel. Schumpert agreed to reinstate the full benefits retroactive to March 12, the date of judicial demand.
The WCJ disagreed with Young's assertion regarding the date of restoration of full benefits, finding that Schumpert had properly restored full benefits retroactive to the date of the filing of the 1008. Young's claim for attorney fees and penalties was denied. Young has appealed.

DISCUSSION

Retroactive Reimbursement
The first issue before this court is whether the date of reimbursement should be:
 the date of judicial demand, as found by the WCJ;
 the date the offset commenced, as urged by Young; or
 the alternative urged by Young, the date the offset was declared unconstitutional.
Section 1225(C)(1), which authorizes a reduction of the workers' compensation obligation when the employee receives other enumerated benefits, is a restriction on an injured employee's right to workers' compensation benefits and must be strictly construed. Cousins v. City of New Orleans, 608 So.2d 978 (La.1992).
Generally, when statutes are declared unconstitutional, they are void ab initio, and all acts done under such statutes are void and of no effect. Smith v. Lincoln Parish Police Jury, 327 So.2d 641 (La.App. 2nd Cir.1976) (citing Flournoy v. First Nat. Bank of Shreveport, 197 La. 1067, 3 So.2d 244 (1941)). Moreover, in general, unless a decision specifies otherwise, it is to be given prospective and retroactive effect. Succession of Clivens, 426 So.2d 585 (La.1982). However, retroactivity is not constitutionally mandated, and states are free to limit the retroactivity of their civil decisional law when necessary or advisable. Id. The decision in Keel makes no mention of whether it is to be applied prospectively only.
*1183 The factors that should be considered in determining whether or not a decision should be limited to prospective effect only are:
(1) [T]he decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed; (2) the merits and demerits must be weighed in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective application will further or retard its operation; and (3) the inequity imposed by retroactive application must be weighed.
Lovell v. Lovell, 378 So.2d 418, 421-2.
It is instructive to review the intended purpose of La. R.S. 23:1225(C). A brief review of the statute's history was provided in Cousins, supra:
In 1978 the Louisiana Legislature enacted La.Rev.Stat. 23:1225 to provide for reduction of state worker's compensation benefits when the employee also receives federal Social Security benefits. The legislation took advantage of a federal statute which permitted a reduction in state compensation payments which when combined with the federal payments would amount to more than the federal maximum. A reduction of the burden on the state compensation system was thereby accomplished. Wex S. Malone & H. Alston Johnson, III, Workers' Compensation Law and Practice, 13 Louisiana Civil Law Treatise, § 289 (2d ed.1980).
In 1983 the Legislature added ... Paragraph C, which provided for reduction of worker's compensation by limiting combined remuneration from worker's compensation, old age insurance benefits under Social Security, benefits under disability benefit plans and other worker's compensation benefits to two-thirds of wages....
Cousins, 608 So.2d at 980.
The coordination of wage loss benefits in the overall system of workers' compensation seeks to assure that the employee receives some degree of recovery for lost wages while precluding the employee from recovering duplicative benefits under different parts of the system that could exceed the actual wages earned prior to the disability. Al Johnson Const. Co. v. Pitre, 98-2564 (La.5/18/99), 734 So.2d 623. The theory is that an employee experiencing only one wage loss should be entitled to receive only one wage loss benefit from the employer. Garrett v. Seventh Ward Gen. Hosp., 95-0017 (La.9/22/95), 660 So.2d 841.
However, as recognized by the supreme court in Keel, there is an important distinction for purposes of La. R.S. 23:1225(C)(1)(b) between old age benefits and benefits intended to replace wages lost as the result of injury:
... While we agree that preventing duplication of benefits is a legitimate state goal, we are convinced that La. Rev.Stat. 23:1225(C)(1)(b) does not meet even the minimum test of bearing a rational relationship to that goal for the following reasons.
Workers' compensation benefits are paid from insurance provided by employers to compensate employees for loss of income resulting from work-related injuries in exchange for their employees' forbearance from suing the employers in tort. Temporary total disability benefits replace a portion of the salary an injured employee could have earned had he not been injured. La.Rev.Stat. 23:1221(1)(a).

*1184 Social Security old age benefits, on the other hand, are not intended to replace wages lost solely by an employee's inability to work. They are provided to persons over the statutory age regardless of injury. Unlike disability benefits or unemployment benefits, a person may receive Social Security old age benefits while still employed and earning additional income. Indeed, those age 70 and older, such as plaintiff, may earn unlimited amounts without any offset against their Social Security income.
Social Security old age benefits are not disability benefits, but old age entitlements serving the same function as pension payments. We point out that other forms of employer-paid retirement income based on tenure cannot be deducted from or "coordinated" with benefits received under the workers' compensation system. Cousins v. City of New Orleans, 608 So.2d 978 (La.1993) (holding that workers' compensation benefits could not be offset under La.Rev.Stat. 23:1225(C)(1)(c) when the firefighter was eligible for tenure-based retirement benefits under the same plan that provided disability benefits); see also Matthews v. City of Alexandria, 619 So.2d 57 (La. 1993).
Keel, 817 So.2d at 9-10.
Schumpert was relying on a provision that penalized Young for receiving old age benefits even though the receipt of those benefits was not antagonistic to the statute's purpose of preventing a windfall in wage loss benefits. Retroactive application of Keel will not retard this purpose.
The exclusion of old age benefits from the La. R.S. 23:1225(C)(1) offset was foreshadowed. As noted in Keel, under 42 U.S.C. § 424(a), the federal system discontinues the offset with state workers' compensation benefits after age 65 when federal disability benefits are converted to old age benefits. In addition, the supreme court in Pierce v. Lafourche Parish Council, 99-2854 (La.5/16/00), 762 So.2d 608, had struck down as unconstitutional that portion of La. R.S. 23:1221(3)(d)(iii) that reduced the duration of supplemental earnings benefits when the employee received Social Security old age benefits. Pierce was rendered after the supreme court had already granted certiorari in an earlier appeal in Keel to review this court's denial of a claim for the Social Security old age benefits offset. The supreme court vacated this court's judgment and remanded the matter to the WCJ because the parties did not have the benefit of the Pierce opinion when the matter was tried. See Wal-Mart Stores, Inc. v. Keel, 99-1540 (La.6/23/00), 765 So.2d 325.
Any harshness of the retroactive application of Keel is mitigated by the reality of the lack of finality in workers' compensation judgments. Usually, once a judgment has become final, the parties are bound thereby regardless of any future change in circumstances. Netherton Co. v. Scott, 34,521 (La.App. 2d Cir.4/6/01), 784 So.2d 772, writ denied, XXXX-XXXX (La.6/22/01), 794 So.2d 792. However, workers' compensation judgments are treated differently because if the rules of finality applicable to ordinary civil judgments were applied to compensation awards, the flexibility of the workers' compensation system would be greatly restricted. Falgout v. Dealers Truck Equipment Co., 98-3150 (La.10/19/99), 748 So.2d 399. La. R.S. 23:1310.8(A)(1) gives the WCJ continuing power and jurisdiction over each case, and upon application of a party and after contradictory hearing, the WCJ may make modifications or changes to former findings or orders.
Finally, retroactive application of Keel will not promote inequity in this matter. Reimbursing Young for the benefits that she would have received absent the offset *1185 will simply allow Young to receive the full benefits to which she is entitled.
In Garrett v. Seventh Ward Gen. Hospital, supra, the supreme court held that the La. R.S. 23:1225(C)(1)(c) offset encompassed Social Security disability benefits. Garrett was subsequently overruled in Al Johnson Construction Co. v. Pitre, supra. The retroactive application of Pitre was considered by the 3rd Circuit in Deville v. Technical Resource, XXXX-XXXX (La.App. 3rd Cir.10/31/01), 799 So.2d 800, where the issue before the court was whether a Garrett offset was to be removed retroactive to the date the offset became effective or to the date when Garrett was overruled. The WCJ in Deville ordered retroactive benefits only as far back as the date of the decision in Pitre. The Third Circuit reversed, finding that the claimant was entitled to a reimbursement of benefits from the date the offset commenced.[1] The court stated:
... Retroactive application of the Al Johnson Construction holding will serve only to further the operation of those existing laws. We determine that retroactive application in this matter will produce no great inequity to employers or insurers who are already having to cancel offsets and reimburse those amounts withheld from benefit payments since the time of the Al Johnson Construction decision. To force those entities to make reimbursement from the time the offset was first taken is not inequitable considering that the reimbursement represents the amount to which the claimant was legally entitled at that time.
Deville, 799 So.2d at 802.
By restoring full benefits only as of March 12, 2003, Schumpert centers on the date of judicial demand as the date at which the offset terminated. This position is untenable considering that it is possible for an employer or insurer to receive a credit for benefits paid prior to seeking judicial enforcement of a La. R.S. 23:1225 offset. This court had previously held that in order for an employer to benefit from the La. R.S. 23:1225(C) offset, it must make a demand for an offset, and the employer can reduce its payments only prospectively from the date of judicial demand. Cross v. Travelers Ins. Co., 619 So.2d 610 (La.App. 2d Cir.1993). However, in Holden v. International Paper Co., 31,104 (La.App. 2d Cir.10/28/98), 720 So.2d 442, 445, writ denied, 1998-2956 (La.1/29/99), 736 So.2d 834, this court questioned the requirement of judicial demand by the employer.
After the employee in Holden was injured, he began receiving benefits under his employer International Paper's ("IP") private employer-funded disability plan before either party was aware that workers' compensation benefits applied. When Holden made a workers' compensation claim, IP sought an offset under La. R.S. 23:1225(C)(1). The trial court granted IP a full credit for all disability benefits that Holden had received under IP's plan. Affirming the judgment, this court rejected Holden's argument that IP could not claim the offset until it made judicial demand. This court noted that a requirement of judicial demand was not found in La. R.S. 23:1225(C)(1), and that because Holden had not initially made a claim for workers' compensation benefits, IP had no knowledge of any dispute requiring judicial demand when it commenced paying the private disability benefits. This court stated:
Although a requirement for judicial demand may be necessary to modify an existing worker's compensation judgment or to mark the time for the coordination of the adjustments to the disability benefits paid by the employer and the *1186 social security administration, there is no necessity for the application of this jurisprudentially created rule in this instance.
Holden, 720 So.2d at 445.
In support of the WCJ's judgment, Schumpert cites Zeringue v. Karl Ott Poles & Pilings, XXXX-XXXX (La.App. 1st Cir.5/11/01), 808 So.2d 628, which involved the Garrett offset declared unconstitutional in Pitre, supra. However, the retroactivity of Pitre was not at issue in Zeringue because the claimant only sought termination of the offset from the date of his judicial demand to modify the earlier judgment in light of Pitre. As noted by the court, the claimant "was not seeking retroactive modification of any vested right of defendant," but was seeking to eliminate the offset commencing "on the date of his filing of the Form 1008 claim." Zeringue, 808 So.2d at 631-2.
For the foregoing reasons, we conclude that the trial court erred in denying Young a reimbursement of the offset benefits retroactive to the date the offset commenced.

Penalties and Attorney Fees
Young next argues that the trial court erred in denying her claim for penalties and attorney fees because Schumpert failed to timely restore and refund the offset benefits. Young does not assert whether she is seeking attorney fees and penalties under paragraph F or paragraph I of La. R.S. 23:1201.[2] However, Young contends that Schumpert should be ordered to pay penalties and attorney fees because it failed to timely pay benefits. In addition, Young references the "reasonably controverted" standard in her brief. Thus, Young is apparently seeking attorney fees and penalties under paragraph F.
Brown v. Texas-LA Cartage Inc., 98-1063 (La.12/1/98), 721 So.2d 885, 890, explained the difference between the arbitrary and capricious standard and the reasonably controverted standard as follows:
Unreasonably controverting a claim... requires action of a less egregious nature than that required for arbitrary and capricious behavior. Arbitrary and capricious behavior consists of willful and unreasoning action, without consideration and regard for facts and circumstances presented, or of seemingly unfounded motivation. Stated another way, such behavior arises from unrestrained exercise of the will or personal preference or lacks a predictable pattern.
The phrase "reasonably controverted," on the other hand, mandates a different standard. In general, one can surmise from the plain meaning of the words making up the phrase "reasonably controvert" that in order to reasonably controvert a claim, the defendant must have some valid reason or evidence upon which to base his denial of benefits. Thus, to determine whether the claimant's right has been reasonably controverted... a court must ascertain whether the employer or his insurer engaged in a nonfrivolous legal dispute or possessed factual and/or medical information to reasonably counter the factual and medical information presented by the claimant throughout the time he refused to pay all or part of the benefits allegedly owed.
Citations and footnote omitted.
Penalties are stricti juris and should be imposed only when the facts clearly negate *1187 good faith and just cause in connection with the refusal to pay. Lee v. Schumpert, 36,733 (La.App. 2d Cir.1/29/03), 836 So.2d 1214. Nevertheless, a WCJ has great discretion in awarding or denying penalties and attorney fees. Nowlin v. Breck Const. Co., 30,622 (La.App. 2d Cir.6/24/98), 715 So.2d 112.
Under either standard, the WCJ did not abuse his discretion in denying penalties and attorney fees. At the very least, Schumpert reasonably controverted Young's demand for complete reimbursement. The legal dispute was not frivolous as the jurisprudence in this circuit and elsewhere was not dispositive of the issue.

DECREE
With each party to bears its own costs, we REVERSE that part of the judgment denying Young's claim for reimbursement of all benefits offset retroactive to October 20, 1998. The remainder of the judgment is AFFIRMED.
NOTES
[1] The court found Pitre to be retroactive in its effect to the date of the Garrett decision, which was in 1995. The offset in Deville began in October of 1998.
[2] Paragraph F provides for the assessment of a penalty and attorney fees against the employer or insurer for the failure to provide payment. The employer or insurer can escape the sanctions if the claim is reasonably controverted. Paragraph I subjects an employer to attorney fees and penalties when it discontinues the payment of claims due, and the discontinuance is arbitrary, capricious, or without probable cause.