WILLIAMS, Judge.
bThe defendant, Edgar Smith, appeals a judgment finding that his medical problems of stroke and ischemic colitis and his permanent and total disability are unrelated to his myocardial infarction in 1980. The trial court dismissed defendant’s re-conventional demand seeking payment of medical expenses, permanent total disability benefits, penalties and attorney fees. For the following reasons, we reverse in part, amend and affirm as amended.
FACTS
Edgar Smith worked for Caldwell Wholesale Company (“Caldwell”) as an outside salesman with a route in Northwest Louisiana. On August 20, 1980, Smith suffered a heart attack while making a sales call at a grocery store in Shreveport. He reported to the emergency room at Schumpert Medical Center for treatment. Caldwell, through its workers’ compensation insurer, The Phoenix Insurance Company (“Phoenix”), paid compensation benefits to Smith until November 24,1980, when he returned to work.
Smith continued to experience heart problems and in April 1982 he underwent coronary bypass surgery. In August 1982, Smith returned to parLtime work and in March 1983 he was released to perform his usual duties. In October 1983, Smith suffered another heart attack and the insurer resumed payment of workers’ compensation benefits.
Subsequently, Smith applied for and was awarded Social Security disability benefits effective October 9, 1983, based on a finding that Smith suffered from ischemic heart disease with chest pain. In February 1986, Caldwell’s insurer reduced Smith’s weekly benefit from $148 to $94.24 as an offset of his Social Security disability payments.
I pin 1999, Smith suffered a stroke and in August 2000, he was hospitalized and treated for ischemic colitis. Caldwell’s insurer refused to pay the medical expenses related to these conditions. Smith’s attorney wrote a letter to the insurer concerning the unpaid charges and enclosed a note from Smith’s treating physician, Dr. James Jackson, who opined that the ischemic colitis was “secondary to the same disease process” which caused Smith’s underlying heart attack. In response, the insurer sought a second opinion from Dr. Thomas Brown, who opined that Smith’s colitis was not caused by the job stress and heart attack 20 years earlier. The insurer denied payment for Smith’s hospitalization.
Subsequently, Caldwell and its insurer, Phoenix, filed a petition for declaratory judgment asking the district court to resolve issues concerning their responsibility to continue paying Smith workers’ compensation benefits. Smith filed a declina-tory exception of lack of subject matter jurisdiction on the grounds that the Office of Workers’ Compensation (OWC) has exclusive original jurisdiction of matters involving compensation benefits. After the exception was denied, Smith filed an answer and three amended petitions-in-re-convention seeking payment of medical expenses incurred for the treatment of is-chemic colitis and stroke, permanent total disability (PTD) benefits, reimbursement for the offset in workers’ compensation payments, penalties and attorney fees.
After a trial, the court issued a ruling finding that Smith’s 1980 heart attack was work related and was compensable and that the employer was estopped from denying that claim. The court also found that Smith’s |3subsequent stroke and is-chemic colitis were not related to the 1980 myocardial infarction and that medical expenses for those conditions were not com-pensable. After taking Smith’s claim for PTD benefits under advisement, the trial court issued a supplemental ruling finding *1259 that his present status of permanent and total disability was not caused by the work-related heart attack, but was “caused by habitual cigarette smoking.” The court rendered judgment denying the insurer’s claim that the 1980 heart attack was not compensable and denying Smith’s claims for payment of medical expenses related to ischemic colitis and stroke, for PTD benefits, reimbursement for the offset in workers’ compensation payments, penalties and attorney fees. Smith appeals the judgment.
DISCUSSION
Smith contends the trial court erred in finding that his stroke and ischemic colitis are not related to the 1980 myocardial infarction. Smith argues that the insurer should pay the medical expenses incurred for the treatment of the stroke and is-chemic colitis because those conditions were secondary to the same disease process which caused his work-related heart attack.
The term “injury” includes those injuries resulting from violence to the physical structure of the body and such disease or infections which naturally result therefrom. LSA-R.S. 23:1021(8)(a). An employer is liable for workers’ compensation when the initial injury is aggravated by medical complications or a subsequent injury, if the complications are caused by the work-related injuiy. Bandy v. International Paper Co., 29,085 (La.App.2d Cir.2/26/97), 690 So.2d 902; Fields v. Sperry Rand Corp., 343 So.2d 339 (La.App. 2d Cir.), writ denied, 345 So.2d 902 (La.1977).
Factual findings in workers’ compensation cases are subject to the manifest error or clearly wrong standard of appellate review. In applying the manifest error standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the faet-finder’s conclusion was reasonable. Freeman v. Poulan/Weed Eater, 93-1530 (La.1/14/94), 630 So.2d 733; Stobart v. State, 617 So.2d 880 (La.1993).
In the present case, Dr. Herbert Master, who was accepted as an expert in cardiology, testified that in 1980 he performed a cardiac catheterization on Smith after his heart attack to determine the extent of the disease process. Dr. Master stated that one of Smith’s coronary arteries was closed because of his pre-existing atherosclerosis, which is the formation of deposits called plaque on the inner wall of the artery. Dr. Master testified that in 1980, Smith’s artery contained plaque that ruptured, a piece of plaque was dislodged and caused an occlusion resulting in a myocardial infarction. Dr. Master stated that the disease process of atherosclerosis can cause plaque buildup in other arteries throughout the body and can predispose a person to stroke and ischemic colitis. Dr. Master explained that ischemia means restricted blood supply, so that ischemic colitis is deprivation of blood supply to the colon. Dr. Master testified that atherosclerotic plaque buildup causes decreased blood flow and that the risk factors for atherosclerosis include hypertension, smoking, diabetes, high cholesterol and a family history of heart disease.
| ¡¡Regarding one of the factors, Dr. Master explained that cigarette smoking introduces carbon monoxide into the cells of arteries and decreases oxygen delivery, causing plaque to break down and rupture. This process can cause a blood clot to develop in the coronary artery and restrict blood flow to the heart. Dr. Master testified that he advises every smoker to discontinue smoking and that Smith’s failure to stop smoking meant there was a higher probability that his atherosclerosis would continue to progress. Dr. Master opined that Smith’s 1980 heart attack did not *1260 cause the ischemic colitis, which resulted from the general vascular disease of atherosclerosis spreading to different parts of his body. Dr. Master stated that in his experience those heart patients who reduced their risk factors by ceasing to smoke, losing weight, exercising and lowering their blood pressure and cholesterol, recovered more quickly than those patients who were unable or unwilling to modify their behavior.
Dr. James Jackson, who was accepted as an expert in the field of internal medicine, testified that he had been Smith’s treating physician since 1982. Dr. Jackson stated that in August 2000 he diagnosed Smith with ischemic colitis and that Smith had suffered strokes in 1998 and 2003. Dr. Jackson testified that he related Smith’s ischemic colitis and strokes to the same atherosclerotic disease process that caused his initial heart attack. However, Dr. Jackson opined that the 1980 heart attack did not cause either the ischemic colitis or strokes. Dr. Jackson testified that Smith should quit smoking because it is one of the major risk factors for the development and progression of atherosclerosis and that statistics have shown that patients |Bwho continued to smoke after a heart attack increased their risk of having another heart attack. Dr. Jackson stated that Smith had not complied with the recommendation to quit smoking.
Dr. Thomas Brown, who 'was accepted as an expert in cardiology, testified that in January 2001 he examined Smith at the request of the employer’s insurer. Dr. Brown diagnosed Smith as having atheros-clerotic cardiovascular disease. Dr. Brown stated that atherosclerosis makes heart attacks, strokes and ischemic colitis more likely to occur and that Smith’s risk factors for developing the disease included high blood pressure, smoking, a family history of coronary disease and high cholesterol. Dr. Brown opined that Smith’s failure to stop smoking or to modify his other risk factors, and not the 1980 heart attack, accelerated the progression of his atheros-clerotic disease. Dr. Brown testified that Smith’s ischemic colitis was a manifestation of his atherosclerotic disease spreading to another organ system. Dr. Brown stated that there was no causal relationship between Smith’s work-related heart attack and his subsequent stroke and is-chemic colitis.
Both Dr. Master and Dr. Brown opined that Smith’s ischemic colitis and strokes resulted from the progression of his ather-osclerotic disease, accelerated by his failure to reduce his risk factors, and were not the result of the initial work-related heart attack. In addition, although Dr. Jackson opined that the 1980 heart attack, ischemic colitis and strokes were all part of the same atherosclerotic disease process, he did not find a causal relationship between that initial heart attack and the subsequent conditions.
17Based upon the medical testimony in this record, we cannot say the trial court was clearly wrong in finding that Smith’s work-related heart attack did not cause his subsequent ischemic colitis and strokes. Thus, the court did not err in concluding that Smith was not entitled to compensation for medical expenses incurred for treatment of ischemic colitis and stroke. The assignment of error lacks merit.

Permanent Total Disability

In two assignments of error, Smith contends the trial court erred in finding that his current permanent and total disability was caused by smoking and was not the result of his work-related heart attack. Smith argues that the evidence shows that he has been permanently and totally disabled since his initial heart attack because he was never able to fully recover his health after his work injury.
*1261 An injured employee bears the initial burden of establishing the causal connection between the disability and the employment accident by a reasonable preponderance of the evidence. Harris v. Coushatta Industrial Sand, Inc., 31,977 (La.App.2d Cir.6/16/99), 741 So.2d 143. An employer is obligated to furnish all necessary medical expenses related to the work injury. Bandy, supra; Knotts v. Snelling Temporaries, 27,773 (La.App.2d Cir.12/6/95), 665 So.2d 657.
In the present case, the record shows that after Smith’s initial heart attack, Dr. Master wrote a letter to the insurer in November 1980, stating that although Smith was a candidate for continued medical therapy his treadmill exercise testing showed that his tolerance for exercise was | sexcellent. Dr. Master reported that Smith was capable of returning to work and that “the coronary artery disease in the right coronary artery, which is not the area of infarction, is not hemodynamieally significant at this time. However, should this patient not refrain from his smoking habits as he has been advised there is a high probability that this disease will progress” in future years.
In November 1980, Smith resumed his sales job with a reduced work load, but continued to experience health problems. In April 1982, Smith needed to have coronary bypass surgery, which was successful and in August 1982 he was able to return to work three days per week. However, despite the decreased work schedule, over time Smith more quickly became short of breath with exertion and began feeling sharp pain in his chest that increased with coughing and deep breaths. In October 1983, Smith was hospitalized with a diagnosis of probable subendocardial infarction and a history of atherosclerotic cardiovascular disease.
At the time, a cardiac catheterization showed significant double vessel and possible triple vessel coronary atherosclerosis. In addition, although the right coronary artery bypass graft was open, the left anterior descending coronary artery bypass graft was completely obstructed approximately 18 months after Smith’s surgery. Thus, the record shows that following bypass surgery Smith’s atherosclerosis continued to progress during a period when he was working less, but continuing to smoke and to have elevated blood pressure and cholesterol levels.
The trial court considered the medical evidence and weighed the |flwitness testimony. As previously noted, each of the physicians testified that Smith’s atherosclerosis pre-existed his initial heart attack and that the cause of his current disabling symptoms was the progression of the ath-erosclerotic disease, exacerbated by Smith’s inability to stop smoking and lower his blood pressure and cholesterol levels. Smith contends he was permanently and totally disabled after the 1980 heart attack, but the record shows that he was able to work after that injury and after his bypass surgery.
Based upon the evidence presented, we cannot say the trial court was clearly wrong in finding that Smith failed to establish a causal connection between his work-related heart attack and his current disability. The assignments of error lack merit.

Social Security Offset

In two assignments of error, Smith contends the trial court erred in failing to make findings of fact regarding his claim for reimbursement of the insurer’s reduction in his weekly compensation payments. Smith argues that he should be reimbursed for the offset taken for his Social Security old-age benefits because the statutory authority was held unconstitutional.
When enacted in 1983, LSA-R.S. 23:1225(C) provided that if an employee *1262 was receiving workers’ compensation benefits and Social Security old-age benefits, then compensation benefits would be reduced so that the aggregate remuneration did not exceed 66 2/3 per cent of the average weekly wage. In Wal-Mart Stores, Inc. v. Keel, 01-3013 (La.4/3/02), 817 So.2d 1, the supreme court concluded that LSA-R.S. 23:1225(C)(l)(b), which permitted an employer to reduce the workers’ compensation benefits |1flpaid to a disabled employee who was also receiving Social Security old-age benefits, arbitrarily and unreasonably discriminated against persons age 65 and older and was unconstitutional.
Here, Smith began receiving Social,Security disability benefits in December 1984. In February 1986, the insurer reduced Smith’s weekly compensation payments to offset his Social Security disability benefits. On February 21, 2001, Smith became 65 years old and his Social Security disability benefits were converted to old-age benefits. The insurer continued to apply the offset to Smith’s compensation benefits to reflect receipt of his old-age benefits. The statutory provision allowing such ah offset was declared unconstitutional by the Keel decision.
Generally, when statutes are declared unconstitutional, they are void ab initio and all acts done under such statutes are void and of no effect. Young v. Christus Schumpert Medical Center, 39,-593 (La.App.2d Cir.5/11/05), 902 So.2d 1180. Unless a decision specifies otherwise, it is to be given prospective and retroactive effect. Succession of Clivens, 426 So.2d 585 (La.1982); Young, supra. In determining whether a decision should be given only prospective effect, this court in Young, supra, noted the following factors:
(1) The decision established a new principle of law, either by overruling clear precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed; (2) the merits must be weighed in each case by considering the prior history of the rule in question, its purpose and effect, and whether retrospective application will further its operation; and (3) the inequity imposed by retroactive application must be weighed.
In Young, this court considered the foregoing factors and concluded | nthat reimbursement of the offset benefits should be retroactive to the date when the offset commenced. Consequently, in this case Smith is entitled to reimbursement of the weekly offset amount of $53.76 for Social Security old-age benefits retroactive to February 21, 2001.
Smith also argues that if his work injury did not produce permanent total disability, then the employer and its insurer were not entitled to an offset for his Social Security disability benefits. LSA-R.S. 23:1225(A) provides that workers’ compensation benefits for injuries producing permanent total disability shall be reduced when the person is receiving Social Security disability benefits. Section 1225(A) is a wage-loss benefit coordination statute enacted specifically to coordinate Louisiana workers’ compensation benefits and federal Social Security disability benefits in cases of permanent total disability. Johnson Construction Co. v. Pitre, 98-2564 (La.5/18/99), 734 So.2d 623.
In the present case, we note that there had not been a finding that Smith was permanently totally disabled until the trial court’s December 2004 ruling. The parties had not stipulated that Smith was permanently totally disabled as a result of the work injury. To the contrary, the employer and its insurer denied in their pleadings and in their appellate brief that Smith’s work-related heart attack caused his dis *1263 ability. Thus, LSA-R.S. 23:1225(A) is not applicable in this case.
Workers’ compensation benefits shall be reduced when the employee receives disability benefits from an employer-funded benefit plan. LSA-R.S. 23:1225(C)(1)(c). In Garrett v. Seventh Ward General Hospital, 95-0017 (La.9/22/95), 660 So.2d 841, the supreme court held that Section 1225(C)(1)(c) entitled an employer to a reduction in its workers’ compensation obligation when Social Security disability benefits were contemporaneously received by a disabled employee. However, the supreme court specifically overruled Garrett in the case of Johnson Construction Co. v. Pitre, supra, concluding that Section 1225(C)(1)(c) did not apply to Social Security disability benefits. The court recognized that federal offset provisions already prevented a Social Security disability recipient from receiving more than a certain percentage of his pre-injury wages regardless of his other disability income. Pitre, supra; Deville v. Technical Resource, 01-0622 (La.App. 3rd Cir.10/31/01), 799 So.2d 800.
Considering the previously stated factors for determining whether a judicial decision should be given retroactive effect, we note that the Pitre decision established a new principle of law by overruling precedent upon which litigants had relied, that the purpose of the statutory provision was to assure that the employee would recover some degree of lost wages while precluding recovery of duplicate benefits and that the employers’ practice of taking the offset was initially upheld by the supreme court in Garrett. Based upon the foregoing factors, we conclude that Smith is entitled to reimbursement of all benefits offset by the insurer from May 18, 1999, the date of the Pitre decision. We shall amend the judgment accordingly.

Jurisdiction

Smith contends the trial court erred in denying his declinatory exception of lack of subject matter jurisdiction. He argues that because the 11spresent matter is the first time any party has filed a claim for relief, this claim is new and should have been heard by the OWC under the procedure enacted in the 1989 amendments to the Workers’ Compensation Act.
Acts 1989, No. 260 provides that a claim arising from an injury which occurred pri- or to July 1, 1983, shall be resolved in the same manner as other civil matters. In Fauchaux v. City of New Orleans, 95-2500 (La.1/12/96), 666 So.2d 285, the supreme court concluded that pursuant to the statute, because the claimant’s injury occurred prior to July 1, 1983, the claim shall be resolved in the district courts.
Here, Smith was injured on August 20, 1980, prior to July 1, 1983. Consequently, the claim arising from Smith’s work-related injury must be resolved in district court. Thus, the court did not err in denying Smith’s exception. The assignment of error lacks merit.
CONCLUSION
For the foregoing reasons, that part of the trial court’s judgment denying Smith’s claim for reimbursement of benefits offset is reversed, and the judgment is hereby amended to order reimbursement to Edgar Smith of the weekly offset amount of $53.76 retroactive to May 18, 1999. In all other respects the judgment is affirmed. Costs of this appeal are assessed to the appellees, Caldwell Wholesale Company and Phoenix Insurance Company.
REVERSED IN PART, AMENDED, AFFIRMED AS AMENDED.