STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

DEMETRIA MOUTON

VERSUS

LAFAYETTE PHYSICAL REHABILITATION HOSPITAL, ET AL.

**********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - # 4
PARISH OF LAFAYETTE, NO. 11-10502
ADAM C. JOHNSON, WORKERS' COMPENSATION JUDGE

**********

ULYSSES GENE THIBODEAUX
CHIEF JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Elizabeth A. Pickett, and John E. Conery, Judges.

**REVERSED AND RENDERED.**

Charles M. Jarrell
Guglielmo, Lopez, Tuttle, Hunter & Jarrell
P. O. Drawer 1329
Opelousas, LA 70571-1329
Telephone: (337) 948-8201
COUNSEL FOR:
    Defendants/Appellees - Lafayette Physical Rehabilitation Hospital and
    LEMIC Insurance Co.

Gloria A. Angus
Angus Law Firm, LLC
P. O. Box 2337
Opelousas, LA 70571
Telephone: (337) 948-8800
COUNSEL FOR:
    Plaintiff/Appellant - Demetria Mouton

**THIBODEAUX, Chief Judge.**

Plaintiff, Demetria Mouton, filed this suit in the Office of Workers' Compensation against her employer, Lafayette Physical Rehabilitation Hospital, and Lafayette Physical's workers' compensation insurer, LEMIC Insurance Company (collectively, Defendants), alleging several miscalculations involving her workers' compensation payments. These allegations were resolved prior to trial. Defendants answered the suit, and alleged that they were entitled to an offset of $988.00 a month for long-term disability (LTD) insurance payments Ms. Mouton was eligible to receive from her disability insurer. The Workers' Compensation Judge (WCJ) found in favor of Defendants and granted them the full offset. Ms. Mouton appeals that judgment. For the following reasons, we reverse and render a new judgment based on an offset in the amount Ms. Mouton is actually receiving from LTD.

## I.

## ISSUE

We will consider whether the WCJ erroneously granted Defendants an offset of $988.00 for LTD payments Ms. Mouton was entitled to receive.

## II.

## FACTS AND PROCEDURAL HISTORY

Ms. Mouton sustained an injury while in the course and scope of her employment with Lafayette Physical. As a result of her injuries, Ms. Mouton is entitled to receive $1,010.06 per month in workers' compensation, $988.00 per month in LTD insurance, and $1,423.00 per month in Social Security Disability

(SSD) benefits. LEMIC is Lafayette Physical's workers' compensation insurer, and Lincoln Financial Group provided Ms. Mouton with her LTD insurance, which Lafayette Physical fully funded.

Pursuant to the LTD insurance contract, Lincoln took an offset from Ms. Mouton's workers' compensation payments, resulting in a reduction of her monthly payment to the minimum allowed by the contract, $50.00. To avoid a dispute with Defendants, however, Lincoln switched the source of its offset to Ms. Mouton's SSD payments, an offset also provided by the contract, and which also resulted in a reduction of her monthly payments to $50.00. After Ms. Mouton filed suit to resolve other matters relating to her workers' compensation benefits, Defendants asserted that, under La.R.S. 23:1225, they are entitled to a $988.00 offset per month, the amount Ms. Mouton is entitled to receive from Lincoln, even though Lincoln only pays her $50.00 a month. The WCJ found in favor of Defendants and allowed them to take the full offset. Ms. Mouton appeals that judgment.

III.

## LAW AND DISCUSSION

### *Standard of Review*

Statutory interpretation is a question of law. We review questions of law de novo without deference to the lower court's decision. *Louisiana Municipal Assoc. v. State*, 04-227 (La. 1/19/05), 893 So.2d 809. "When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written," without further interpretation into the legislative intent. *Id.* at 837. Further, each word in a statute is presumed to be effective and

serve a useful purpose; therefore, we will give effect to all parts of a statute, understood as a whole. *Broussard v. Lafayette Parish Sch. Bd.*, 08-666 (La.App. 3 Cir. 12/10/08), 998 So.2d 1253, *writ denied*, 09-471 (La. 4/17/09), 6 So.3d 794.

## *Discussion*

Defendants allege that they should receive an offset for the full amount of LTD benefits for which Ms. Mouton is eligible, regardless of the amount she actually collects. We disagree. Louisiana Revised Statutes 23:1225(C) states, in part, that:

C. (1) If an employee receives remuneration from:

(a) Benefits under the Louisiana Workers' Compensation Law.

. . .

(c) Benefits under disability benefit plans in the proportion funded by an employer.

(d) Any other workers' compensation benefits,

then compensation benefits under this Chapter shall be reduced . . . so that the aggregate remuneration from Subparagraphs (a) through (d) of this Paragraph shall not exceed sixty-six and two-thirds percent of his average weekly wage.

. . .

(3) If an employee is receiving both workers' compensation benefits and disability benefits subject to a plan providing for reduction of disability benefits, the reduction of workers' compensation benefits required by Paragraph (1) of this Subsection shall be made by taking into account the full amount of employer funded disability benefits, pursuant to plan provisions, before any reduction of disability benefits are made.

Section 1225 is a wage-loss benefit coordination statute. *Al Johnson Const. Co. v. Pitre*, 98-2564 (La. 5/18/99), 734 So.2d 623. Benefit coordination laws serve a dual purpose in the system of wage-loss protection; namely, these laws assure an employee receives some type of recovery for lost wages, while precluding her from receiving duplicative benefits that exceed her actual pre-injury wages. *Id.* The statute calls for the reduction of workers' compensation benefits when the employee receives remuneration from an employer-funded disability plan. Here, Ms. Mouton is receiving benefits from an employer-funded LTD plan; however, she is receiving significantly less than she is entitled to because her disability insurer, pursuant to plan provisions, has taken an SSD offset.

Defendants contend that Section (C)(3) of the statute calls for a reduction of the full amount of employer-funded disability benefits, even though Lincoln is not currently paying the full amount. We believe Defendants are misreading the statute. Section (C)(1) states that if an employee *receives* remuneration from workers' compensation and disability, then disability can be offset. Section (C)(3) calls for an offset of the full amount of disability benefits the employee *receives* (per section (C)(1)) pursuant to disability plan provisions. Section (C)(3)'s reference to "the full amount of employer funded disability benefits" is unavailing to the Defendants. When read as a whole, the statute contemplates an offset for the full amount that the employee receives from her LTD insurer. Our interpretation of the statute is consistent with the objective of benefit coordination laws, which are designed to ensure the employee receives certain wage-loss protection. Were we to grant Defendants the full offset, when Ms. Mouton is not collecting that amount, she would receive $22.06 per month in workers' compensation benefits and $50.00 per month in disability benefits,

thereby reducing her total benefits to a mere fraction of her pre-injury wages. This would defeat the statute's objective and militate against receipt of deserved benefits.

We further conclude that Section (C)(3) envisions a situation in which the disability insurer and workers' compensation insurer want to take competing offsets *from each other*. Defendants assert that because Section (C)(3) states that the workers' compensation insurer is entitled to the offset before the disability insurer, this means that Defendants are entitled to the full amount of the disability insurance payments. In this case, however, Lincoln and Defendants are not fighting for the same offset; Lincoln has taken an offset from Social Security, and Defendants want an offset from Lincoln. Section (C)(3) does not address this type of tripartite situation.

Defendants' reliance on *Nesom v. Brown and Root, U.S.A., Inc.*, 987 F.2d 1188 (5th Cir. 1993), as outcome determinative in their favor is misplaced. At the outset, we note that this is a federal decision interpreting an insurance contract, not Louisiana law. As such, we are not bound by its holding. Nevertheless, since Defendants rely so heavily on the decision, we will distinguish it. In that case, the plaintiff, Nesom, claimed both workers' compensation benefits from Brown & Root (B&R), his employer, and disability benefits from UNUM Life Insurance Company of America (UNUM) under a partially employer-funded plan. While the employer initially disputed that Nesom's injuries were work-related, and refused to pay his workers' compensation payments, UNUM admitted liability and began to pay Nesom under his disability policy. The state court found in Nesom's favor that his injuries were work-related, and applied Section 1225 to allow B&R to take an offset from UNUM's payments. After this, UNUM reduced

5

its monthly payments to Nesom in accordance with the provisions of the disability policy allowing an offset for workers' compensation. In essence, therefore, both UNUM and B&R took simultaneous offsets from the amount the other was required to pay. The court in that case determined that the disability policy "envisions that once the amount of workers' compensation is determined under state law, that amount will be setoff under the policy." *Id.* at 1193. Thus, UNUM was allowed to set off only the amount B&R actually paid Nesom.[1]

We distinguish *Nesom* from the instant case in several respects. First, the court in *Nesom* interpreted a disability insurance contract; Section 1225 was not at issue in that case. Further, the disability insurer and the employer/workers' compensation insurer were trying to take offsets from each other; SSD payments were not involved. Also, both the disability insurer and the employer/workers' compensation insurer were made parties to the case. Here, Lincoln is not a party and thus, we are not at liberty to determine what amount Lincoln is entitled to take as an offset under the LTD policy. Finally, Defendants' reliance on *Nesom* is misplaced because the court clearly stated that the disability insurer could only take an offset of the *actual amount* the plaintiff received under workers' compensation. The disability insurer was not allowed to take an offset for the amount Nesom was entitled to receive under workers' compensation. This holding directly contradicts Defendants' contention that we should allow the full offset, and in fact and law support Ms. Mouton's position.

Although we can find no case law mirroring the precise situation presented here, in cases concerning offsets in general, the offset amount is the

---

[1] Section (C)(3) was enacted after *Nesom* and attempts to clarify the appropriate disposition in a case analogous to *Nesom*.

amount the employee actually receives. *See, e.g. Smalley v. Integrity, Inc.*, 31,247 (La.App. 2 Cir. 12/9/98), 722 So.2d 332; *Holden v. Int'l Paper Co.*, 31,104 (La.App. 2 Cir. 10/28/98), 720 So.2d 442). Further, the Louisiana Supreme Court has held that "workers' compensation benefits received by an employee can only be reduced when the aggregate remuneration from the listed benefit sources in Section 1225(C)(1) exceeds 66 2/3 percent of the average weekly wage." *Jones v. General Motors Corp.*, 03-1766, p. 14 (La. 4/30/04), 871 So.2d 1109, 118-19. If we allow Defendants to take an offset for the full amount of disability benefits to which Ms. Mouton is eligible, her monthly benefits would be far below 66 2/3 percent of her average weekly wage.

We are aware that after our decision, Ms. Mouton will be making more than her pre-injury wages when SSD, workers compensation, and LTD are all taken into account. Our Supreme Court has held, however, that the phrase "benefits under disability benefit plans" found in Section 1225(C) does not include SSD benefits. *Pitre*, 732 So.2d 623. In *Al Johnson Construction Co. v. Pitre*, the court reconsidered its prior holding in *Garrett v. Seventh Ward Gen. Hosp.*, 95-17 (La. 9/22/95), 660 So.2d 841, wherein it held that SSD benefits were included in Section 1225's phrasing because of the statute's purpose: preventing an injured employee from receiving double recovery. The court realized in *Pitre*, however, that *Garrett* was wrongly decided because such double recovery is precluded by federal law. The Social Security Act, 42 U.S.C. § 424a, requires that SSD benefits be reduced when the combined benefits from SSD and workers' compensation amount to more than eighty percent of the injured employee's prior earnings. *Id.* Because the Louisiana Legislature specifically provided for an offset for SSD benefits in the case of permanent total disability in Section 1225(A), and took no

7

similar steps to include SSD benefits in Section 1225(C), the court determined that it had erred in divining that the legislature intended Section 1225(C) to include SSD benefits. SSD benefits are, therefore, not included in the calculation pursuant to Section 1225(C).

We hold that Section 1225 entitles Defendants to an offset equal to the amount Ms. Mouton is currently receiving in LTD benefits from Lincoln. Defendants, therefore, may take an offset in the amount of $50.00 per month. According to the record, Ms. Mouton is entitled to $233.09 per week in workers' compensation benefits.[2] As a monthly figure, her workers' compensation benefits amount to $1,010.06 a month.[3] After subtracting the $50.00 a month Lincoln pays Ms. Mouton under her disability policy, Defendants Lafayette Physical and LEMIC are hereby required to pay Ms. Mouton $960.06 a month, or $221.55 a week.[4]

## IV.

## CONCLUSION

For the reasons above, we reverse the Office of Workers' Compensation judgment and render a new judgment ordering Defendants, Lafayette Physical Rehabilitation Hospital and LEMIC Insurance Co., to pay Demetria Mouton $960.06 a month in workers' compensation benefits.

**REVERSED AND RENDERED**.

---

[2]Ms. Mouton's current workers' compensation payment amount comes from both parties' pretrial statements.

[3]We multiplied Ms. Mouton's weekly payments, $233.09, by fifty-two weeks in a year, and then divided that number by twelve months to arrive at the monthly figure of $1,010.06.

[4]We multiplied Ms. Mouton's monthly workers' compensation payment, $960.06, by twelve months in a year, and then divided that number by fifty-two weeks to arrive at the weekly figure of $221.55.