GARRETT, J.
IrThe claimant, Shelia Hill, 'appeals from a judgment in which the workers’ compensation judge (“WCJ”) found that her employer, Fresenius Medical. Care NA (“FMC”), was entitled to a credit on supplemental earning benefits (“SEBs”) it owed to her because she had received long-term disability (“LTD”) benefits paid under a disability insurance policy funded solely by FMC. We affirm.
FACTS;
The claimant was hired by FMC in 2002, to work as a dialysis technician at its facility in Bossier City. In 2010, she began seeing Dr. Clint McAlister, an orthopedist, for tingling and numbness in her arms. He diagnosed severe bilateral carpal tunnel syndrome (“CTS”), which was caused or aggravated by her work duties, and recommended release surgery. On May 1, 2Ó12, another orthopedist, Dr. Michelle Ritter, was consulted for a second opinion. She concurred in Dr. McAlister’s diagnosis and treatment plan’ FMC accepted the claim as work-related and, on May 4, 2012, it began paying the claimant temporary total disability (“TTD”) benefits.
The claimant underwent carpal tunnel release surgeries in June 2012 and August 2012, which were performed by Dr, Michael Acurio. In January 2013, Dr. Acurio diagnosed her as suffering degenerative joint disease of the left basilar joint with metacarpal, phalangeal instability, along with ongoing residual CTS. Howeyer, the claimant’s medical records were reviewed by Dr. Eric George, who concluded that her basilar joint pain was degenerative and unrelated, to her employment. He and Dr. Ritter (who saw the claimant again in December 2012) opined that the claimant *592 could return |2to work with modifications. FMC denied that the basilar thumb arthritis was related to her employment. On March 1, 2013, the claimant proceeded with the basilar joint surgery through her private insurance.
On March 17, 2013, FMC terminated TTD benefit payments to the claimant. Effective March 17, 2013, the claimant began receiving LTD benefits at the rate of $1,352 per month under a Cigna disability plan funded entirely by FMC. The policy contained the following relevant provisions:
Other Income Benefits
An Employee for whom Disability Benefits are payable under this Policy may be eligible for benefits from Other Income Benefits. If so, the Insurance Company may reduce the Disability Benefits by the amount of such Other Income Benefits.
Other Income Benefits include:
[[Image here]]
2. any Social Security disability benefits the Employee or any third party receives (or is assumed to receive*) on his or her own behalf or for his or her dependents; or which his or her dependents receive (or are assumed to receive*) because of his or her entitlement to such benefits.[1]
[[Image here]]
4. any amounts received (or assumed to be received*) by the Employee or his or her dependents under any workers’ compensation, occupational disease, unemployment compensation law or similar state or federal law payable for Injury or Sickness arising out of work with the Employer, including all permanent and temporary disability benefits. This includes any damages, compromises or settlement paid in place of such benefits, whether or not liability is admitted.
[[Image here]]
Recovery of Overpayment
The Insurance Company has the right to recover any benefits it has overpaid. The Insurance Company may use any or all of the following to recover an overpayment:
1. request a lump sum payment of the overpaid amount;
2. reduce any amounts payable under the Policy; and/or
3. take any appropriate collection activity available to it.
[[Image here]]
Is Workers’ Compensation Insurance
The Policy is not in lieu of and does not affect any requirements for coverage under any Workers’ Compensation Insurance Law.
In August 2013, the claimant filed a disputed claim for compensation in which she asserted that, as a result of her employment, she had developed an occupational disease — severe CTS — due to repetitive and cumulative activities and became disabled in March 2012. She asserted that her wage benefits were terminated on March 18, 2013. The claimant also requested penalties, interest and attorney fees. In its answer, FMC disputed her claims and also pled the right to claim any offsets allowable by law.
In September 2013, Dr. Ritter found that the claimant did not require further treatment for her CTS, but concluded that she had residual symptoms which resulted in permanent work restrictions. On August 5, 2014, Dr. Acurio diagnosed her with degenerative joint disease of the right thumb and maintained her work restrictions.
*593 Trial on the merits was held on August 20, 2014. On September 24, 2014, the WCJ issued lengthy written reasons for judgment. At the outset, the WCJ noted that it was undisputed that the claimant developed severe bilateral CTS, a compen-sable occupational disease, as the result of her employment. The WCJ found that the claimant failed to prove a causal connection between her basilar joint arthritis and her employment; that she was entitled to SEBs at a weekly rate of $410.59 (based on stipulated average weekly wage of $615.88), retroactive to March 17, 2013, due to her residual CTS; that FMC was entitled to an offset pursuant to La. R.S. 23:1225 at the rate of $1,352 per month, based on the claimant’s receipt of 14employer-funded LTD benefits; and that the claimant was entitled to a penalty of $2,000 and attorney fees of $8,000, due to FMC’s arbitrary and capricious termination of her disability benefits.[2]
On the offset issue, the WCJ noted that the claimant testified that a representative of the LTD insurer told her that she had to reimburse the payments and forgo any future benefits due to her receipt of Social Security Disability benefits.[3] He concluded that her testimony on this matter was not “competent evidence” required under La. R.S. 23:1317, and that FMC was entitled to the offset under La. R.S. 23:1225(C). In a footnote, the WCJ stated that, even if the claimant was ultimately required to reimburse the LTD benefits she received, FMC was still arguably entitled to the offset under La. R.S. 23:1225(0(3). Also arguably, if she should have to make reimbursement, that could be deemed a change in circumstances for purposes of modification under La. R.S. 23:1310.8. Since she had not reimbursed the LTD payments, the court found it unnecessary to address these issues. Judgment was signed on September 24, 2014.
On October 1, 2014, the claimant filed a motion for new trial on the issue of the employer-funded LTD benefits. Attached to her motion was a recently received letter from Cigna dated| September 22, 2014, which stated that she owed $17,676.10 in overpayments due to a retroactive award of Social Security Disability benefits, and requested repayment by October 22, | ¿2014. Based upon this new evidence, the claimant argued that FMC should receive no credit for the payments. FMC opposed the motion, citing the footnote in the WCJ’s written reasons for judgment.
On October 16, 2014, the WCJ granted the motion for new trial and set the matter for December 16, 2014. On that date, a new trial limited to the offset was held. Although no testimony was adduced, the claimant admitted into evidence: the Cig-na policy; the Cigna letter dated September 22, 2014; and the SSA letter awarding her monthly disability benefits, beginning in September 2012.[4] The parties stipulated that the claimant continued to receive the Cigna payments through August 2014, and that she had not paid anything back to Cigna. Following argument, the WCJ took the matter under advisement.
On January 7, 2015, the WCJ again issued written reasons for judgment. He *594 noted that Cigna’s demand for overpayment was based on the claimant’s receipt of Social Security Disability benefits, not workers’ compensation benefits. To determine whether the reduction or elimination of the LTD benefits impacted the offset under La. R.S. 23:1225(0), the WCJ looked to Mouton v. Lafayette Physical Rehab. Hosp., 2013-103 (La.App. 3d Cir.6/5/13), 114 So.3d 626, for guidance. In that case, the third circuit held that under La. R.S. 23:1225, the employer was entitled to an offset on workers’ compensation benefits limited to the amount of LTD benefits that the claimant actually received. The WCJ found that Mouton was distinguishable in one significant respect. Whereas in Mouton, the | (¡employer sought to take an offset that was far beyond the amount of the LTD benefits actually received by the claimant, here FMC sought and was granted an offset based only on the benefits which were, in fact, paid to the claimant. As to the possibility that the claimant might have to reimburse Cigna for the LTD benefits at a future date, the WCJ candidly admitted/“This court has neither the knowledge nor the foresight, much less the jurisdiction, to determine whether that will ever happen.”[5] - Again, the WCJ stated that should the claimant reimburse Cig-na in the future, that might constitute a change in circumstances justifying' modification under La. R.S. 23:1310.8. The WCJ concluded that, as long as the claimant retained the LTD benefits received from Cigna, or at least until she agreed to or was ordered to reimburse the payments, FMC was entitled to the corresponding offset under the statute.
Based upon the stipulations made at the new trial that the LTD benefits ceased in August 2014, the WCJ amended its prior order to reflect that the 1225(C) offset terminated as of September 1, 2014. Judgment was signed on February 10, 2015, awarding FMC a credit for the LTD benefits in the amount of $1,352 per month,- but only from March 17, 2013, to September 1, 2Q14, against the SEBs of $410.59 per week given to the claimant.[6] The claimant appealed, arguing that the ruling on the offset was 17wrong and that she should be awarded additional attorney fees for pursuing the appeal.
LAW

Statutes

■ La, R.S. 23:1225, which addresses reductions when other benefits are payable, provides in relevant part: .
C. (1) If an employee receives remuneration from: ■
(a) Benefits under the Louisiana Workers’ Compensation Law.
(b) Repealed by Acts 2003, No. 616, § 1.
(c) Benefits under disability benefit plans in the proportion funded by an employer.
(d) Any other workers’ compensation benefits,
then compensation benefits under this Chapter shall be reduced, unless there is an agreement to the contrary between the employee and the employer liable for payment of the workers’ compensation benefit, so that the aggregate remu *595 neration from Subparagraphs (a) through (d) of this Paragraph shall not exceed sixty-six and two-thirds percent of his average weekly wage.
(2) Notwithstanding the provisions of Paragraph (1) of this Subsection, benefits payable for injury to an employee under this Chapter shall not be reduced by the receipt of benefits under this Chapter or any other laws for injury or death sustained by another person.
(3) If an employee is receiving both workers’ .compensation benefits and disability benefits subject to a plan providing for reduction of disability benefits, the reduction of workers’ compensation benefits required by Paragraph (1) of this Subsection ‘shall be made by taking into account the full amount of employer funded disability benefits, pursuant to plan provisions, before any réduction of disability benefits are made.
(4) If a conflict arises between the application of the provision's of this Section and those of any other Louisiana law or contract of insurance, the provisions of this Section shall control.

IsJurisprudence

Statutory interpretation is a question of law. We review questions of law de novo without deference to the lower court’s decision. Louisiana Mun. Ass’n v. State, 2004-0227 (La.1/19/05), 893 So.2d 809; Mouton v. Lafayette Physical Rehab Hosp., supra.
Section 1225 is a wage-loss benefit coordination statute. Benefit coordination laws serve a dual purpose in the system of wage-loss protection; namely, these laws assure an employee receives some type of recovery for lost wages, while precluding her from receiving duplicative benefits that exceed her actual pre-injury wages. The statute calls for the reduction of workers’ compensation benefits when the employee receives remuneration from an employer-funded, disability plan. Mouton v. Lafayette Physical Rehab. Hosp., supra.
When an employee receives,’in ad dition to workers’ compensation benefits, the benefits under another (non-workers’ compensation) disability plan. funded by the employer, the employer is entitled to a credit for the benefits received by the employee from the separate disability plan. Holden v. International Paper Co., 31,104 (La.App.2d Cir.10/28/98), 720 So.2d 442, writ denied, 98-2956 (La.1/29/99), 736 So.2d 834; Feild v. Gen. Motors Corp., 36,339 (La.App.2d Cir.9/18/02), 828 So.2d 150.
Because La. R.S. 23:1225(0(1) is a restriction on an injured employee’s right to workers’ compensation benefits, it must be strictly construed. Jones v. Gen. Motors Corp., 2003-1766 (La.4/30/04), 871 So.2d 1109. An employer seeking credit for benefits covered by. the statute has the burden of Rproving both entitlement to and the amount of the credit. Feild v. Gen. Motors Corp., supra; Jones v. Gen. Motors Corp., supra.
DISCUSSION
After both the original trial and the new trial, the WCJ held that FMC was entitled to the offset under La. R.S. 23:1225(C). On both occasions,, he also concluded that, should the claimant have to reimburse Cigna in the future, she may request modification under La. R.S. 23:1310.8 on the grounds of change in circumstances.[7] We agree with the WCJ’s *596 rulings, which were narrowly tailored to the facts currently before him.
The claimant concedes that the WCJ is correct that, under La. R.S. 23:1225, FMC would normally be due credit for payments made to an injured employee under the LTD policy for which it paid the premiums. However, she contends that the policy which FMC chose to purchase includes clauses that allow it to receive a credit for workers’ compensation benefits and Social Security Disability payments, and that is against public policy. She also points to the policy provision which states that the policy does not affect any coverage, requirement under workers’ compensation insurance law.
In opposition, FMC argues that the WCJ correctly applied the law in allowing it the statutory offset. It disputes the claimant’s assertion that she is entitled to receive the full amount of LTD benefits funded by it and the full amount of SEBs not discounted based upon her receipt of the LTD | ^benefits. It further maintains that the LTD policy language does not bar it from receiving an offset of these benefits.
We find no merit to the claimant’s arguments. She desires to keep the entire amount of both the SEBs mandated by Louisiana’s workers’ compensation law and the LTD benefits fully funded by her employer. However, La. R.S. 23:1225(C) allows an employer which has fully funded LTD benefits for its employees to obtain an offset, so that it is not effectively funding both the state-mandated disability benefits and the voluntarily funded LTD benefits. In this case, FMC has demonstrated that it is such an employer which is entitled to that statutory offset.
Furthermore, the record shows that the claimant received LTD benefits of $1,352 per month from March 17, 2013, through August ■ 2014. The WCJ awarded her SEBs at a rate of $410.59 per week, based upon her stipulated average weekly wage of $615.88 (or $1,779.21 per month), retroactive to March 17, 2013. The WCJ ordered an offset- of $1,352 per month for the LTD benefits from March 17, 2013, to September 1, 2014. After that date, the claimant began receiving only the SEBs of $1,779.21 per month. Thus, during the disputed period, the aggregate remuneration received by the claimant was the 66¾ percent of her average weekly wage to which she was entitled, all in accordance with La. R.S. 23:1225(C).
We do not find it necessary to rule upon the language in the Cigna policy giving Cigna the right to take a credit against workers’ compensation benefits for LTD benefits paid to the employee or its potential effect upon the statutory offset established in Section 23:1225(C). Cigna, which is not a [n party to this suit, did not seek any credit for any workers’ compensation payments.
As correctly noted by the trial court and FMC, in the event that the claimant is required to make any reimbursements to Cigna in the future, at that time she may file a motion for modification based upon a change in conditions, pursuant to the provisions of La. R.S. 23:1310.8.
CONCLUSION
The judgment below is affirmed. Costs of this appeal are assessed to the claimant, Shelia Hill, and her demand for additional attorney fees related to her unsuccessful appeal is denied.
AFFIRMED.

. Prior to a 2011 policy amendment, this section also included retirement benefits.

. FMC did not appeal from any of these rulings.

. Between the time the claim for workers’ compensation benefits was filed in August 2013 and the trial was held in August 2014, the claimant was notified by the Social Security Administration (SSA) by letter dated March 1, 2014, that she was entitled to monthly disability benefits, beginning in September 2012.

.The letter also stated that she was to receive a lump sum of $8,503.75 for September 2012 to February 2014, and monthly payments thereafter.

. The WCJ noted the claimant’s testimony during the first trial that she hoped to retain some portion of the LTD benefits that she received.

. Judge Patrick Robinson presided over the trial and the new trial and issued written reasons for judgment after both. ‘ Following Judgp Robinson’s appointment as interim director for the Office of Workers’ Compensation Administration, Chief Judge Sheral Rel-iar signed the judgment rendered after the new trial, pursuant to an order designating her as the successor judge authorized to preside' over Judge Robinson’s pending matters.

. We also note that FMC's counsel concurred with this analysis when the matter was being argued at the new trial in December 2014. He stated, "I think the Court does retain jurisdiction over that. If she ever has to pay the long-term disability, benefits, I think she *596 would be entitled to full workers’ comp benefits for that period.”