# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 19-401

CHRISTINE GOTREAUX

VERSUS

LIBERTY MUTUAL INSURANCE COMPANY, ET AL.

**********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION – DISTRICT 04
PARISH OF LAFAYETTE, NO. 18-08509
ANTHONY PALERMO, WORKERS' COMPENSATION JUDGE

**********

## ULYSSES GENE THIBODEAUX
## CHIEF JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Phyllis M. Keaty, and Candyce G. Perret, Judges.

**AFFIRMED IN PART; REVERSED IN PART AND REMANDED.**

Mark L. Riley
The Glenn Armentor Law Corporation
300 Stewart Street
Lafayette, LA 70501
Telephone: (337) 233-1471
COUNSEL FOR:
    Plaintiff/Appellant – Christine Gotreaux

Corey M. Meaux
Allen & Gooch, A Law Corporation
2000 Kaliste Saloom Road – Suite 400
P. O. Box 81129
Lafayette, LA 70598-1129
Telephone: (337) 291-1630
COUNSEL FOR:
    Defendants/Appellees – Liberty Mutual Insurance Company and Quick Turn Merchandising

**THIBODEAUX, Chief Judge.**

Plaintiff, Christine Gotreaux, filed an appeal to the Office of Workers' Compensation (OWC) Medical Director after her employer, Quick Turn Merchandising, and its insurer, Liberty Mutual Insurance Company (collectively Defendants), denied her orthopedic surgeon's request for approval for a thoracic spinal fusion. The Medical Director denied the appeal, finding no segmental instability or other criteria to warrant its approval of Plaintiff's request. Plaintiff then appealed the Medical Director's decision to the OWC. Finding Plaintiff had failed to prove, by clear and convincing evidence, that the Medical Director's decision was not in accordance with the Workers' Compensation Act (WCA), the Workers' Compensation Judge (WCJ) rendered judgment in favor of Defendants, dismissing the matter with prejudice.

Although our review of the record reveals no manifest error in the WCJ's review of the Medical Director's finding as to segmental instability, we nevertheless reverse its dismissal of Plaintiff's claim as we find the WCJ legally erred in too narrowly interpreting the lumbar fusion guidelines he relied upon in refusing to overturn the Medical Director's decision that Plaintiff was not entitled to a variance under the WCA. Accordingly, we affirm the judgment on the issue of segmental instability, reverse the judgment as to dismissal, and remand this matter to the WCJ for further proceedings consistent with this opinion.

I.

**ISSUE**

We shall decide whether the WCJ erred misinterpreting the application of the Medical Treatment Schedules and thereby denying the claim.

## II.

## FACTS AND PROCEDURAL HISTORY

This workers' compensation claim arises out of an accident that occurred on April 9, 2011, when Plaintiff was employed by Quick Turn Merchandising to provide services at a Lowe's store in Lafayette, Louisiana. While moving a rack of plants, Plaintiff felt her back crack. Although Defendants initially denied the claim, the matter was litigated and ultimately resolved by a consent judgment which stated that Plaintiff was injured in the course and scope of her employment, compensation was due at the rate of $262.50 per week, and medical treatment was to be provided pursuant to the OWC medical treatment guidelines.

Over the last eight years, Plaintiff has seen numerous physicians and has had multiple surgeries, including both lumbar and cervical spinal fusions. There have also been several additional disputes about payments and medical treatment since the original consent judgment.

The current dispute and appeal arise from a Form 1010 request made by Dr. Mark McDonnell, Plaintiff's orthopedic surgeon, for authorization or approval for a thoracic spinal fusion that was not preauthorized by the medical treatment guidelines. Defendants denied the request for a lack of segmental instability. A Form 1009 appeal to the Medical Director was denied for lack of instability or other fusion criteria. Plaintiff then filed a Form 1008 to appeal the Medical Director's decision.

A hearing was held for the parties to present arguments and evidence regarding the merits of Plaintiff's appeal, during which Plaintiff introduced several exhibits: (1) Dr. McDonnell's medical records; (2) the Form 1010; (3) the Form 1009; (4) the Medical Director's decision; (5) excerpts from the medical treatment

guidelines on lumbar spine, La. Admin. Code tit. 40, Pt. I, § 2023(G)(4)(d); (6) New York State medical guidelines for mid and lower back injuries; (7) Dr. McDonnell's response to Defendants' requests for clarification of need for surgery; and (8) Dr. McDonnell's deposition.

Plaintiff presented her medical records through these exhibits. These records noted her prior surgeries and her history of radiating mid back pain, as well as outlined the radiographic tests performed in 2011, 2013, 2016, 2017, and 2018, showing thoracic disc herniations at T6-7 and T7-8. Plaintiff also presented Dr. McDonnell's assessment that Plaintiff has thoracic pain with radicular features and radiographic proof of pathology consistent with her complaints, along with his recommendation for a thoracic fusion at T6-7 and T7-8. Rehabilitation notes attached to Form 1010 and Form 1009 documented failure of conservative treatment, while the New York guidelines showed that New York treats injuries to the thoracic spine and lumbar spine in conjunction with the other. Finally, Dr. McDonnell's deposition and his response letter reveal that, while there are no thoracic spinal fusion guidelines, the customary practice in the medical community is to apply the lumbar spinal fusion guidelines, which set forth several criteria for spinal fusions. And while Plaintiff did not meet the segmental instability criterion, Dr. McDonnell opined that she did meet other lumbar fusion criteria given that she presents with "disc space collapse (resorption) at T6-7 and T7-8" and "[d]isc herniations (painful annular tears) at T6-7 and T7-8[,]" as well as a "kyphosis problem where the spine is bent forward."

The WCJ rendered an oral ruling. In that ruling, the WCJ noted that the thoracic spine is not covered by the medical treatment guidelines, La. Admin.

3

Code tit. 40, Pt. I, §§ 2001 et seq., which required him to look to other guidelines in determining the evaluation. The WCJ then reasoned:

> If we look to the other guidelines, then the thoracic spine is treated like the lumbar spine. If you treat it like the lumbar spine, then -- Dr. McDonnell addressed that situation in his deposition. However, it's important to note that the standard in these matters is to prove by clear and convincing evidence that the medical director was incorrect in his determination of whether or not the -- whatever the treatment was was appropriate under the guidelines.
>
> Dr. McDonnell, in his deposition, agreed that there was no instability. The medical director based his decision on the fact that there was no instability. Therefore, it has not been shown by clear and convincing evidence that the medical director was wrong with regards to his denial of the surgery. Therefore, the Court declines to overturn the decision of the medical director.

The WCJ subsequently signed his written judgment, decreeing that Plaintiff "failed to meet her necessary burden of proving, by clear and convincing evidence, that the decision of the Medical Director in connection with the thoracic surgery recommended by Dr. Mark McDonnell was not in accordance with the Workers' Compensation Act."

III.

## STANDARD OF REVIEW

Louisiana Revised Statutes 23:1203.1(K) sets forth the standard of review applicable to overturn a medical director's decision:

> After the issuance of the decision by the medical director or associate medical director of the office, any party who disagrees with the decision may then appeal by filing a "Disputed Claim for Compensation", which is LWC Form 1008, within forty-five days of the date of the issuance of the decision. The decision may be overturned when it is shown, by clear and convincing evidence, the decision of the medical director or associate medical

4

director was not in accordance with the provisions of this Section.

An appellate court reviews a WCJ's judgment regarding the propriety of a medical director's decision for manifest error. *Guidry v. Am. Legion Hosp.*, 14-1285 (La.App. 3 Cir. 4/1/15), 162 So.3d 728. The proper interpretation of statutory provisions, however, is a question of law subject to de novo review "without deference to the lower court's decision." *Mouton v. Lafayette Physical Rehab. Hosp.*, 13-103, p. 2 (La.App. 3 Cir. 6/5/13), 114 So.3d 626, 628.

## IV.

## LAW AND DISCUSSION

The matter herein is governed by La.R.S. 23:1203.1. In *Church Mutual Insurance Co. v. Dardar*, 13-2351, pp. 5-20 (La. 5/7/14), 145 So.3d 271, 275-84 (footnotes omitted) (emphasis added), the supreme court explained the legislative rationale in the enactment of its provisions:

> Enacted by the legislature in 2009, La. R.S. 23:1203.1 is the product of a combined endeavor by employers, insurers, labor, and medical providers to establish meaningful guidelines for the treatment of injured workers. 1 DENIS PAUL JUGE, LOUISIANA WORKERS' COMPENSATION, § 13:6 (2d ed.2013). Dissatisfied with a process for obtaining needed medical treatment that was cumbersome, uncertain and often fraught with expense, employers and their insurers perceived a need for guidelines that would assure them that the treatment recommended by a medical provider was generally recognized by the medical community as proper and necessary. *Id*. In a similar vein, labor and their medical providers were concerned about the unreasonable delays regularly encountered in obtaining approval for treatment when disputes arose as to the necessity for the treatment and with having a procedure for obtaining approval for treatment that might vary from established guidelines. *Id*. Thus, La. R.S. 23:1203.1 was enacted with the express intent "that, with the establishment and enforcement of the medical treatment schedule, medical

5

and surgical treatment, hospital care, and other health care provider services shall be delivered in an efficient and timely manner to injured employees." La. R.S. 23:1203.1(L).

. . . .

With the express intent of delivering health care services to injured employees "in an efficient and timely manner," La. R.S. 23:1203.1 adopts evidence-based medicine as the guidepost for assessing whether the medical care required to be provided under La. R.S. 23:1203 is necessary. To that end, La. R.S. 23:1203.1 requires the promulgation of a medical treatment schedule, which consists of a list of preauthorized procedures, administratively developed and approved according to criteria set forth by the statute. These preauthorized procedures provide a benefit and advantage to injured workers and their treatment providers who are relieved of the burden of establishing the medical necessity of the preauthorized procedures and, at the same time, impose a clear-cut obligation on employers. *By their terms, La. R.S. 23:1203.1 and the medical treatment schedule do __not__ exclude any particular care.* Instead, these provisions represent and reflect a rational policy choice by the legislature to confer authority on the Director of the OWC, with the assistance of the medical advisory council and the medical director, to determine in advance the medical necessity for certain medical care, in particular circumstances, in order to avoid case-by-case disputes and variations and to streamline the process. As regards medical procedures not included in the medical treatment schedule and, thus, not presumptively deemed necessary, claimants can overcome the predetermination by seeking review and/or a variance from the medical director of the OWC. And, in the event a variance is denied, claimants have resort to another administrative level of review conducted by the OWC judge.

As recognized by the WCJ, the procedure recommended by Dr. McDonnell, i.e., thoracic spinal fusion, is not specifically provided for in the medical treatment guidelines promulgated pursuant to the provisions of La.R.S. 23:1203.1(B)(C) and (D). In such circumstances, La.R.S. 23:1203.1(I) provides that

[m]edical care, services, and treatment that varies from the promulgated medical treatment schedule shall also be due

6

by the employer when it is demonstrated to the medical director of the office by a preponderance of the scientific medical evidence, that a variance from the medical treatment schedule is reasonably required to cure or relieve the injured worker from the effects of the injury or occupational disease given the circumstances.

Similarly, La.R.S. 23:1203.1(M)(2) authorizes a variance from the medical treatment schedule and the guidelines upon which the schedule is based when "it is demonstrated to the medical director, in accordance with the principles of Subsection C of this Section, that a preponderance of the scientific medical evidence supports approval of the treatment that is not covered." Subsection C, in turn, provides for the conscientious, explicit, and judicious use of current best evidence in making decisions about the care of individual patients, integrating clinical expertise, which is the proficiency and judgment that clinicians acquire through clinical experience and clinical practice, with the best available external clinical evidence from systematic research.

Regarding the best external clinical evidence and criteria for the recommended thoracic spinal fusion, Dr. McDonnell and presumably the Medical Director both relied upon the lumbar spinal fusion guidelines. As Dr. McDonnell explained, "the thoracic spine anatomically resembles the lumbar spine more than the cervical spine, therefore, using lumbar guidelines in the thoracic spine makes sense." Moreover, the rules and medical treatment guidelines adopted by other states serve as instructive aids in the development of our own guidelines. *See* La.R.S. 23:1203.1(D)(5). And under New York's Workers' Compensation Board Medical Treatment Guidelines, mid (thoracic) and low (lumbar) back injuries are addressed and treated under the same guideline. It logically follows, therefore, that our lumbar

7

spinal fusion guidelines provide the best criteria in determining whether Plaintiff would be entitled to a variance for the recommended thoracic surgery.

Our guidelines or indicators for lumbar spinal fusion are set forth in La. Admin. Code tit. 40, Pt. I, § 2023(G)(4)(d) (emphasis added), which provides:

> Indications for spinal fusion may include:
>
> i.    neural   arch   defect   -   spondylolytic spondylolisthesis, congenital unilateral neural arch hypoplasia;
>
> ii.  segmental instability - excessive motion, as in degenerative   spondylolisthesis,   surgically   induced segmental instability;
>
> iii.  *primary mechanical back pain/functional spinal unit failure - multiple pain generators objectively involving <u>two or more</u> of the following:*
>
> *(a).  internal disc disruption (poor success rate if more than one disc involved);*
>
> *(b).  painful motion segment, as in annular tears;*
>
> *(c).  disc resorption;*
>
> (d)  facet syndrome; and/or
>
> (e).  ligamentous tear;
>
> iv.  revision surgery for failed previous operation(s) if significant functional gains are anticipated;
>
> v.  infection, tumor, or deformity of the lumbosacral spine that cause intractable pain, neurological deficit, and/or functional disability.

In denying Plaintiff's request for a variance, the Medical Director noted: "There is no instability or fusion criteria as required for the procedure per the guidelines." Dr. McDonnell testified that Plaintiff did not suffer from segmental instability, and the parties all agree that there is no segmental instability. Therefore, we find no manifest error in the WCJ's refusal to overturn the Medical Director's

decision as to this particular criterion and affirm his judgment as to segmental instability.

Nevertheless, as recited above, the lumbar guidelines enumerate five separate and independent criteria or indicators for spinal fusion. Although Dr. McDonnell in both his records and his deposition testimony conceded that no segmental instability exists, Plaintiff contends that his testimony and records document her "primary mechanical back pain/functional spinal unit failure - multiple pain generators" relating diagnostically to (1) "internal disc disruption"; (2) "painful motion segment, as in annular tears;" and (3) "disc resorption"—three of the five sub-factors listed in Section 2023(G)(4)(d)(iii)(a)(b) & (c) emphasized above. Dr. McDonnell, in his response letter, opined that Plaintiff's disc space collapse and disc herniations at T6-7 and T7-8 "correspond to lumbar MTG **2023, G, 4, d, iii, (c) and (b) respectively**." Dr. McDonnell further expounded upon his opinion in his deposition, adding that her kyphosis, i.e., the bending forward of her spine, was another factor, which made her a prime candidate for this type of procedure to alleviate her pain as well as greatly increase her functional abilities.

Yet in his oral ruling, the WCJ did not address this evidence concerning the mechanical pain/functional failure criterion. Though we note that a party appeals the judgment and not the reasons for judgment, it is clear from his oral ruling that the WCJ relied solely on segmental instability to the exclusion of the four remaining criteria in the lumbar spinal fusion guidelines.

It is clear from the rationale in *Dardar*, however, that the medical treatment guidelines are intended to be permissive and should not be read restrictively. Moreover, because the purpose of the guidelines is to expedite rather than impose any impediments to treatment, the guidelines should be read

expansively, not narrowly tailored to exclude rather than include reasonably recommended procedures to efficiently and timely cure or relieve the effects of an occupational injury.

Therefore, we find the WCJ legally erred in too narrowly interpreting the lumbar spinal fusion guidelines by failing to consider the indicators or criteria outside of segmental instability. Accordingly, we reverse the dismissal of Plaintiff's claim and remand this matter to the WCJ to determine whether Plaintiff has presented clear and convincing evidence that the decision of the Medical Director was not in accordance with the lumbar spinal fusion guidelines, specifically the indicators set forth in La. Admin. Code tit. 40, pt. I, § 2023(G)(4)(d)(iii)(a)(b) & (c).

V.

**CONCLUSION**

For the foregoing reasons, the judgment of the Workers' Compensation Judge is affirmed in part and reversed in part. This matter is remanded for further proceedings consistent with this opinion.

Costs of this appeal are assessed to Defendants/Appellees, Quick Turn Merchandising and Liberty Mutual Insurance Company.

**AFFIRMED IN PART; REVERSED IN PART AND REMANDED.**