# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

# WCA 20-455


**CHRISTINE GOTREAUX**

**VERSUS**

**QUICK TURN MERCHANDISING, ET AL.**


\*\*\*\*\*\*\*\*\*\*


APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - # 4
PARISH OF LAFAYETTE, NO. 18-08509
ANTHONY PAUL PALERMO, WORKERS' COMPENSATION JUDGE

\*\*\*\*\*\*\*\*\*\*

**BILLY HOWARD EZELL**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Billy Howard Ezell, John E. Conery, and Candyce G. Perret, Judges.


**REVERSED.**

**Mark Louis Riley**
**The Glenn Armentor Law Corporation**
**300 Stewart Street**
**Lafayette, LA 70501**
**(337) 233-1471**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
    **Christine Gotreaux**

**Corey M. Meaux**
**Allen & Gooch**
**P. O. Box 81129**
**Lafayette, LA 70598-1129**
**(337) 291-1630**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
    **Liberty Mutual Insurance Company**
    **Quick Turn Merchandising**

**EZELL, Judge.**

For the second time, Christine Gotreaux appeals a judgment rendered by the Office of Workers' Compensation, which refused to overturn the Medical Director's decision denying her request for a thoracic spinal fusion. She argues that she established by clear and convincing evidence that she met the criteria establishing her need for the surgery.

## FACTS

In the prior appeal, this court set forth the following facts:

> This workers' compensation claim arises out of an accident that occurred on April 9, 2011, when Plaintiff was employed by Quick Turn Merchandising to provide services at a Lowe's store in Lafayette, Louisiana. While moving a rack of plants, Plaintiff felt her back crack. Although Defendants initially denied the claim, the matter was litigated and ultimately resolved by a consent judgment which stated that Plaintiff was injured in the course and scope of her employment, compensation was due at the rate of $262.50 per week, and medical treatment was to be provided pursuant to the OWC medical treatment guidelines.

> Over the last eight years, Plaintiff has seen numerous physicians and has had multiple surgeries, including both lumbar and cervical spinal fusions. There have also been several additional disputes about payments and medical treatment since the original consent judgment.

> The current dispute and appeal arise from a Form 1010 request made by Dr. Mark McDonnell, Plaintiff's orthopedic surgeon, for authorization or approval for a thoracic spinal fusion that was not preauthorized by the medical treatment guidelines. Defendants denied the request for a lack of segmental instability. A Form 1009 appeal to the Medical Director was denied for lack of instability or other fusion criteria. Plaintiff then filed a Form 1008 to appeal the Medical Director's decision.

> A hearing was held for the parties to present arguments and evidence regarding the merits of Plaintiff's appeal, during which Plaintiff introduced several exhibits: (1) Dr. McDonnell's medical records; (2) the Form 1010; (3) the Form 1009; (4) the Medical Director's decision; (5) excerpts from the medical treatment guidelines on lumbar spine, La. Admin. Code tit. 40, Pt. I, § 2023(G)(4)(d); (6) New York State medical guidelines for mid and lower back injuries; (7)

Dr. McDonnell's response to Defendants' requests for clarification of need for surgery; and (8) Dr. McDonnell's deposition.

Plaintiff presented her medical records through these exhibits. These records noted her prior surgeries and her history of radiating mid back pain, as well as outlined the radiographic tests performed in 2011, 2013, 2016, 2017, and 2018, showing thoracic disc herniations at T6-7 and T7-8. Plaintiff also presented Dr. McDonnell's assessment that Plaintiff has thoracic pain with radicular features and radiographic proof of pathology consistent with her complaints, along with his recommendation for a thoracic fusion at T6-7 and T7-8. Rehabilitation notes attached to Form 1010 and Form 1009 documented failure of conservative treatment, while the New York guidelines showed that New York treats injuries to the thoracic spine and lumbar spine in conjunction with the other. Finally, Dr. McDonnell's deposition and his response letter reveal that, while there are no thoracic spinal fusion guidelines, the customary practice in the medical community is to apply the lumbar spinal fusion guidelines, which set forth several criteria for spinal fusions. And while Plaintiff did not meet the segmental instability criterion, Dr. McDonnell opined that she did meet other lumbar fusion criteria given that she presents with "disc space collapse (resorption) at T6-7 and T7-8" and "[d]isc herniations (painful annular tears) at T6-7 and T7-8[,]" as well as a "kyphosis problem where the spine is bent forward."

The WCJ rendered an oral ruling. In that ruling, the WCJ noted that the thoracic spine is not covered by the medical treatment guidelines, La. Admin. Code tit. 40, Pt. I, §§ 2001 et seq., which required him to look to other guidelines in determining the evaluation. The WCJ then reasoned:

> If we look to the other guidelines, then the thoracic spine is treated like the lumbar spine. If you treat it like the lumbar spine, then -- Dr. McDonnell addressed that situation in his deposition. However, it's important to note that the standard in these matters is to prove by clear and convincing evidence that the medical director was incorrect in his determination of whether or not the -- whatever the treatment was was appropriate under the guidelines.
>
> Dr. McDonnell, in his deposition, agreed that there was no instability. The medical director based his decision on the fact that there was no instability. Therefore, it has not been shown by clear and convincing evidence that the medical director was wrong with regards to his denial of the surgery. Therefore, the Court declines to overturn the decision of the medical director.

2

The WCJ subsequently signed his written judgment, decreeing that Plaintiff "failed to meet her necessary burden of proving, by clear and convincing evidence, that the decision of the Medical Director in connection with the thoracic surgery recommended by Dr. Mark McDonnell was not in accordance with the Workers' Compensation Act."

*Gotreaux v. Liberty Mut. Ins. Co.*, 19-401, pp. 2-4 (La.App. 3 Cir. 12/18/19), 286 So.3d 613, 614-16 (alterations in original).

Recognizing that there are no medical treatment guidelines for thoracic spinal fusion, this court agreed with the workers' compensation judge (WCJ) that the guidelines and indicators for a lumbar spinal fusion as set forth in La.Admin. Code tit. 40, Pt. 1, § 2023(G)(4)(d) provides the best criteria. This court then found no manifest error in the WCJ's decision to overturn the Medical Director's finding that there was no segmental instability. However, this court further found that the WCJ's decision to rely "solely on segmental instability to the exclusion of the four remaining criteria in the lumbar spinal fusion spinal guidelines" to be in error. *Gotreaux*, 286 So.3d at 619.

We reversed the dismissal of Ms. Gotreaux's claim and remanded the case to the Office of Workers' Compensation "to determine whether Plaintiff has presented clear and convincing evidence that the decision of the Medical Director was not in accordance with the lumbar spinal fusion guidelines, specifically the indicators set forth in La. Admin. Code tit. 40, pt. I, § 2023(G)(4)(d)(iii)(a)(b) & (c)." *Id.*

## DISCUSSION

Once again, we reiterate the standard of review as noted in *Gotreaux*, 286 So.3d at 616:

Louisiana Revised Statutes 23:1203.1(K) sets forth the standard of review applicable to overturn a medical director's decision:

3

After the issuance of the decision by the medical director or associate medical director of the office, any party who disagrees with the decision may then appeal by filing a "Disputed Claim for Compensation", which is LWC Form 1008, within forty-five days of the date of the issuance of the decision. The decision may be overturned when it is shown, by clear and convincing evidence, the decision of the medical director or associate medical director was not in accordance with the provisions of this Section.

An appellate court reviews a WCJ's judgment regarding the propriety of a medical director's decision for manifest error. *Guidry v. Am. Legion Hosp*., 14-1285 (La.App. 3 Cir. 4/1/15), 162 So.3d 728. The proper interpretation of statutory provisions, however, is a question of law subject to de novo review "without deference to the lower court's decision." *Mouton v. Lafayette Physical Rehab. Hosp*., 13-103, p. 2 (La.App. 3 Cir. 6/5/13), 114 So.3d 626, 628.

On remand, the WCJ noted that while "the Medical Director may have needed to review the medical guidelines in a more permissive way, this Court is restricted by the statute requiring that in order to overturn the Medical Director's decision, it must be shown by clear and convincing evidence that the Medical Director's decision was wrong." The WCJ then reviewed the medical records and found Ms. Gotreaux did not meet the guidelines for lumbar surgery in a "significant" manner.

Louisiana Revised Statutes 23:1203.1(I) provides that:

[m]edical care, services and treatment that varies from the promulgated medical treatment schedule shall also be due by the employer when it is demonstrated to the medical director of the office by a preponderance of the scientific medical evidence, that a variance from the medical treatment schedule is reasonably required to cure or relieve the injured worker from the effects of the injury or occupational disease given the circumstances.

Louisiana Administrative Code Title 40, Pt. 1, § 2023(G)(4)(d) (emphasis added), at the time of the Medical Director's decision[1], provided:

---

[1] Louisiana Administrative Code Title 40, Pt. 1, § 2023(G)(4)(d), was amended by the Louisiana Workforce Commission, Office of Workers' Compensation in September 2020. The same content can now be found in subpart (5) as opposed to subpart (4).

4

d. Indications for spinal fusion **may** include:

i. neural arch defect--spondylolytic spondylolisthesis, congenital unilateral neural arch hypoplasia;

ii. segmental instability--excessive motion, as in degenerative spondylolisthesis, surgically induced segmental instability;

iii. primary mechanical back pain/functional spinal unit failure--multiple pain generators objectively involving two or more of the following:

> (a). internal disc disruption (poor success rate if more than one disc involved);
>
> (b). painful motion segment, as in annular tears;
>
> (c). disc resorption;
>
> (d)[.] facet syndrome; and/or
>
> (e). ligamentous tear;

iv. revision surgery for failed previous operation(s) if significant functional gains are anticipated;

v. infection, tumor, or deformity of the lumbosacral spine that cause intractable pain, neurological deficit, and/or functional disability.

The medical treatment guidelines "were established pursuant to La.R.S. 23:1203.1 to *assist* with the medical decision making process for injured workers." *Soniat v. Crown Buick & Mgmt. Servs.*, 14-489, p. 8 (La.App. 5 Cir. 12/16/14), 166 So.3d 278, 283.

In his oral reasons for judgment on March 2, 2020, the WCJ, referring to the medical treatment guidelines, noted that Ms. Gautreaux "has no neural arch defect, no segmental instability, no facet syndrome, no ligamentous tear, no need for revision surgery, and no infection, tumor, or deformities." In reviewing the Medical Director's decision, the WCJ obviously looked for criteria Ms. Gotreaux did not meet instead of also examining the criteria that Ms. Gotreaux did meet. Furthermore,

5

these are suggestive criteria to be used when determining whether spinal fusion surgery is necessary as indicated by the permissive use of "may" in the statute.

Dr. McDonnell applied these guidelines and opined that Ms. Gotreaux was a surgical candidate based on subpart iii of La.Admin. Code tit. 40, Pt. 1, § 2023(G)(4)(d). He testified that the discs at T6-7 and T7-8 were collapsed or resorbed and herniations were visible, meaning de facto annular tears. Therefore, she met the criteria for a spinal fusion as outlined in the medical treatment guidelines. He further explained that the surgery would alleviate 100% of Ms. Gotreaux's pain that radiates from her spine around her rib cage and alleviate at least 50% of her pain located in the center of her spine.

Ms. Gotreaux met criteria suggested by La.Admin. Code tit. 40, Pt. 1, § 2023(G)(4)(d). Also, as explained by Dr. McDonnell, the recommended surgery would relieve Ms. Gotreaux from the effects of her work-related injury. Clearly, Ms. Gotreaux established by a preponderance of the medical evidence that a variance from the medical treatment schedule is required. She established her need for spinal fusion surgery was necessary to relieve her of the effects from her work-related injury. La.R.S. 23:1203.1(I). Considering that Ms. Gotreaux met the criteria for spinal fusion surgery in addition to all the other medical evidence concerning her work-related injury, we find the WCJ manifestly erred in refusing to overturn the Medical Director's decision.

For the foregoing reasons, we reverse the decision of the Office of Workers' Compensation. We order Defendants, Quick Turn Merchandising and Liberty Mutual Insurance, to provide the recommended thoracic spinal fusion. All costs of this appeal are assessed to Defendants.

**REVERSED.**